Joseph **INTERBARTOLO,** Claimant, Appellant,

v.

**UNITED STATES** of America, **Libellant,** Appellee.

No. 5919.

United States Court of Appeals First Circuit.

Heard March 5, 1962.

Decided May 22, 1962.

**HARTIGAN, Circuit Judge.**

This is an appeal from a judgment in favor of the United States in a libel for forfeiture of an automobile alleged to have been used in contravention of the provisions of the internal revenue wagering tax laws.[1] Specifically, this case raises the question of whether an automobile used to transport wagering slips and adding machine tapes in the course of activity by a "pick-up man" in the numbers game is subject to forfeiture under the federal wagering tax laws.

In the argot of number pool wagering, it appears that the term "pick-up man" is applied to the individual who serves as a conduit in transporting the bets from a "writer" to a "banker."

A fuller description of the roles played by these individuals is given by the Supreme Court in United States v. Calamaro, 354 U.S. 351, 353, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957):

> " * * * A numbers game involves three principal functional types of individuals: (1) the 'banker,' who deals in the numbers and against whom the player bets; (2) the 'writer,' who, for the banker, does the actual selling of the numbers to the public, and who records on triplicate slips the numbers sold to each player and the amount of his wager; and (3) the 'pick-up man,' who collects wagering slips from the writer and delivers them to the banker. If there are winnings to be distributed, the banker delivers the required amount to the writer, who in turn pays off the successful players."

Francis J. DiMento, Boston, Mass., with whom DiMento & Sullivan, Boston, Mass., was on brief, for appellant.

Paul J. Redmond, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

On October 13, 1959, Special Agents of the Intelligence Division of the Internal Revenue Service, assigned to investigate wagering tax violations, observed the automobile here in issue being used, as alleged in the libel "to transport, carry, convey, conceal, and possess certain envelopes, betting slips and other memoranda commonly used in the busi-

---

1. 26 U.S.C. Sections 4401, 4411, 4412, 4413, 4421 and 7302.

ness of accepting wagers," by an individual whom the record clearly demonstrates functioned as a "pick-up man." This individual—who was not the owner of the automobile (the claimant here)— was identified at the hearing below simply as a "tall young man about 20–22 years of age, having wavy brown hair."

Seventeen days thereafter, on October 30, 1959, acting without a warrant, a duly authorized delegate of the Secretary of the Treasury seized the automobile while it was parked on a public street in Boston. In so acting the Secretary's delegate purported to invoke the following provisions of the Internal Revenue Code of 1954:

"§ 7302. *Property used in violation of internal revenue laws*

"It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. * * *"

"§ 7321. *Authority to seize property subject to forfeiture*

"Any property subject to forfeiture to the United States under any provision of this title may be seized by the Secretary or his delegate."

In the district court, as here, the claimant resisted the government's seizure on the basis that—so far as is here relevant—under the decision of the Supreme Court in Calamaro, supra, the only individuals subject to the registration and occupational tax provisions of the wagering laws are "bankers" and "writers." There, the Court, after an examination of the pertinent sections of the revenue laws[2] and their legislative his-

tory, concluded that these provisions had no application to a "pick-up man."[3] Consequently, so claimant's argument goes, since the "pick-up man" in the instant case was not violating the pertinent provisions of the internal revenue laws at the time that he was observed transporting the wagering slips on October 13, 1959, the automobile which he utilized in this activity was not subject to forfeiture.

While the district court implicitly recognized the Calamaro holding, it ruled that the vehicle was subject to forfeiture. The court grounded its decision on the following reasoning:

"I find that the young man who used the automobile in question to transport the betting slips and adding-machine tapes from the Cafe did so with the knowledge, consent and authority of those who were carrying on the business of accepting wagers at the Cafe and that the transportation of the betting slips and tapes from the Cafe to Chick's Bargain Shoe Store was an integral part of the wagering business that was being conducted at the Cafe.

"Since in transporting the betting slips and tapes the young man was acting for persons who were engaged in the wagering business and who had neither paid the special occupational tax imposed by section 4411 of the Internal Revenue Code of 1954, nor registered the place of business with the internal revenue district as required by section 4412 of the Code, I find that the automobile was used on October 13, 1959, in violating the internal revenue laws. The fact that the young man himself may not have been liable for the occupational tax under section 4411 did not render the automobile immune to forfeiture."

2. Calamaro involved the provisions of the 1939 Internal Revenue Code. In pertinent part, however, these provisions are substantially the same as those provisions of the 1954 Code which are applicable here.

3. The Calamaro result was reemphasized by the Supreme Court in Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959).

Claimant argues that the district court's finding of consent, authority and agency as a basis for the forfeiture constitutes an impermissive circumvention of the Calamaro holding and would effectively blur the distinctions which the Supreme Court apparently felt it essential to make therein.

We believe that appellant seeks to derive too much comfort from Calamaro. That case was decided in the context of a criminal proceeding for non-payment of the wagering tax and has no application to the instant proceedings—a civil action to enforce a libel for forfeiture. The question in Calamaro was whether a pick-up man or messenger is engaged in "the business of accepting wagers * * * [or] conducts any wagering pool or lottery * * *." 26 U.S.C. § 3285(d) (1939 Internal Revenue Code). As noted previously, the court answered this question in the negative.

■■■ However, it is quite another thing to say that because the driver of the car did not himself require a licensing stamp, the operation in which the automobile was used was legal. Under Section 7302, the automobile was subject to forfeiture if it was property either intended for use or previously used "in violating the provisions of the internal revenue laws." In the instant case the district court found that the claimant knew that his automobile was being used to transport betting slips and tapes and that he allowed it to be used for that purpose. Since it cannot be gainsaid that the transportation of these items was vital to the successful operation of those who were carrying on the business of "accepting wagers" and, who on the present record had not paid the requisite tax, we believe that the automobile was "used in violating the provisions of the revenue laws" and thus was forfeitable under Section 7302. In sum, the thrust of Section 7302 is directed not at the individual but at property

utilized to violate the pertinent revenue laws. And, while under Calamaro the driver here may be innocent of violating the federal gambling laws, the automobile was subject to forfeiture.

Claimant next contends that the action of the government in seizing his automobile without a warrant some seventeen days after its use and while it was innocently parked on a public highway violated the prohibition of the Fourth Amendment against unreasonable seizures. The government argues that once the vehicle was used in the proscribed activity, the owner thereupon lost whatever property rights he may have had in it and, consequently, government agents were under no obligation to procure a warrant before proceeding to seize the automobile. We are thus faced with the question of whether a forfeiture may be enforced where the seizure was made without a warrant.

If, in answering this question, we were able to write on a clean slate, much could be said for the position of requiring a warrant as a prerequisite to seizure of property in a forfeiture proceeding. We believe that the obligation of requiring government agents to procure warrants, at least in the circumstances presented here,[4] before seizing vehicles would work no undue hardship on law enforcement officials and would more closely accord with our traditional concepts of subjecting official seizure of private property to some kind of judicial scrutiny. The alternative to this, under the situation as presently obtains, permits government agents to summarily sweep automobiles off the streets without any legal process, so long as at one time, however remote, those officials believe that the vehicle was used in furtherance of an illicit or proscribed activity. The *ipse dixit* of the officer or the agent is all that is required. However, since infallibility or omniscience is scarcely expected, the official may well be wrong

---

4. Needless to say, this situation must be carefully distinguished from the seizure of an automobile incident to a valid arrest or the right to seize, without warrant, a moving vehicle in *flagrante delicto*.

and the car which is seized might well belong to an entirely innocent person. Of course, in that instance, the owner will undoubtedly have his automobile returned to him. However, in the interim, the predictable harassment and inconvenience is ominously apparent. To at least attempt to forestall this situation, at least in a non-emergency situation, it is not, in our judgment, asking too much that government agents secure legal process before proceeding to seize private property.

However, we do not write on a clean slate. The question of whether an unauthorized seizure of property will bar forfeiture has been answered by the Supreme Court on at least two occasions. While, in each instance, the question arose in a different factual context than is presented here, the Court's rationale appears plainly contrary to the claimant's position here.

In Dodge v. United States, 272 U.S. 530, 47 S.Ct. 191, 71 L.Ed. 392 (1926), it was held that the seizure of a boat by an unauthorized person would not preclude the government from bringing a subsequent action for its condemnation and sale. In speaking for a unanimous Court, Justice Holmes stated:

"The Circuit Court of Appeals relied on the often quoted languauge of Mr. Justice Story in The Caledonian, 4 Wheat. 100 [4 L.Ed. 523], to the effect that anyone may seize any property for a forfeiture to the Government, and that if the Government adopts the act and proceeds to enforce the forfeiture by legal process, this is of no less validity than when the seizure is by authority originally given. * * * The owner of the property suffers nothing that he would not have suffered if the seizure had been authorized. However effected, it brings the object within the power of the Court, which is an end that the law seeks to attain, and justice to the owner is as safe in the one case as in the other. The jurisdiction of the Court was secured by the fact that the *res* was in the possession of the prohibition director when the libel was filed. * * * We can see no reason for doubting the soundness of these principles when the forfeiture is dependent upon subsequent events any more than when it occurs at the time of the seizure, although it was argued that there was a difference. They seem to us to embody good sense. The exclusion of evidence obtained by an unlawful search and seizure stand on a different ground. * *." Id. at 532.

Moreover, in United States v. One Ford Coupe Automobile, 272 U.S. 321, 325, 47 S.Ct. 154, 71 L.Ed. 279 (1926), the Court, in addressing itself to an analogous question, stated:

" * * * It is settled that where property declared by a federal statute to be forfeited because used in violation of federal law is seized by one having no authority to do so, the United States may adopt the seizure with the same effect as if it had originally been made by one duly authorized. * * *"

The overwhelming weight of authority in the circuits holds that a warrant is unnecessary in the enforcement of an action for forfeiture. See, e. g., United States v. Carey, 272 F.2d 492, 494 (5 Cir. 1959); United States v. One 1956 Ford Tudor Sedan, 253 F.2d 725, 727 (4 Cir. 1958); Sanders v. United States, 201 F.2d 158, 159 (5 Cir. 1953); United States v. Pacific Finance Corp., 110 F.2d 732, 733 (2 Cir. 1940); United States v. Eight Boxes Containing Various Articles, 105 F.2d 896 (2 Cir. 1939); Two Certain Ford Coupe Automobiles v. United States, 53 F.2d 187 (5 Cir. 1931).

This rule was adopted by this court in Strong v. United States, 46 F.2d 257, 79 A.L.R. 150 (1931) and there has been no departure from it in the intervening thirty-one years.

Claimant relies on United States v. Plymouth Coupe, 182 F.2d 180 (3 Cir.

1950). In that case, following its consistent position in which it stands alone, the Third Circuit held that an unlawful seizure will defeat an action for forfeiture. However, in explaining its result the court stated:

"We have three reasons for doing so. One is that this Court, not very long ago, three times decided the point. There ought to be some continuity in judicial decision, especially where the effect of that decision is to lay down rules which guide conduct. This one does, or should. Second, we think the rule fits in with the well established line of cases which requires the exclusion of evidence unlawfully obtained. * * * And finally, we see no reason why officers of the law should be encouraged in making so brazen and unwarranted a seizure of a citizen's property as the one made here. There was not the slightest emergency; there was no reason why the seizure, if it was to be made, should not have been made following the issuance of a warrant in regular fashion." Id. at 182.

Accepting the Third Circuit's initial reason—the enhancement of decisional stability—we would be disposed to follow Strong v. United States, supra. That court's second reason that its result would harmonize with the rule requiring the exclusion of illegally obtained evidence was answered unanimously by the Supreme Court in Dodge, supra, where it was stated, as seen above, that "The exclusion of evidence obtained by an unlawful search and seizure stand on a different ground."

While we are in accord with the court's third reason—the desirability of government agents obtaining warrants before attempting seizure—we cannot disregard the great weight of authority to the contrary.

A judgment will be entered enforcing the decree of the district court.