Rigoberto **MELENDEZ**, Individually and on behalf of all others similarly situated, Plaintiff,

v.

George P. **SHULTZ**, as he is Secretary of the Treasury, Defendant.

Civ. A. No. 72–3230–F.

United States District Court, D. Massachusetts.

March 30, 1973.

9. Tr. p. 198.
10. Tr. p. 93.
11. Tr. pp. 63–64.
12. Tr. p. 127.
13. *Id.*
14. Tr. p. 228.

Melvyn Zarr, Boston, Mass., Peter K. Speert, Boston Legal Assistance Project, Dorchester, Mass., for plaintiff.

William A. Brown, Asst. U. S. Atty., for defendant.

Before CAMPBELL, Circuit Judge, and MURRAY and FREEDMAN, District Judges.

### OPINION OF THE COURT

On August 4, 1972, four days after plaintiff's Ford automobile was impounded by the Boston Police for failure to pay parking tickets, it was seized from police storage by an agent of the Federal Bureau of Alcohol, Tobacco and Firearms on behalf of the United States under authority of 49 U.S.C. § 782.[1]

---

1. 49 U.S.C. § 782 provides in part, "Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited. . . ."

49 U.S.C. § 781 makes it unlawful to transport, carry, convey, conceal or pos-

The vehicle was one from which on July 19, 1972, the plaintiff and an associate had been seen by police officers to alight, the associate bearing a "Molotov cocktail" which the two thereafter used in an unsuccessful attempt to ignite a police cruiser. The plaintiff, his associate and another were convicted on July 20, 1972, in the Boston Municipal Court on a non-federal charge of possessing a device which would cause a fire. M.G.L. c. 266 § 102B.

Prior to the seizure, plaintiff was not notified nor was he given an opportunity to be heard. No warrant or court process was sought or secured by the agent making the seizure. On August 8, 1972, the plaintiff learned of the seizure and appeared personally at the Boston office, Bureau of Alcohol, Tobacco and Firearms. He was told by agents that the agents had probable cause to believe the vehicle had been used to transport a "contraband article." He was also told of administrative procedures which he could follow to seek its recovery. Similar information was relayed by telephone to plaintiff's attorney on August 10, 1972. On August 10, 1972, plaintiff filed a petition for remission or mitigation of forfeiture,[2] and on September 1, 1972, a supplemental petition.

Formal written notice of seizure was served upon plaintiff on August 29, 1972, followed by newspaper publication of notice, and further administrative investigation. The Director of the Bureau thereafter issued a written decision, of which plaintiff was notified on October 25, 1972, denying remission of the forfeiture "because the petitioner used the above-described vehicle to transport a destructive device as defined in 26 U.S. C. § 5845(f)." Plaintiff was not afforded a hearing.

I

Alleging that the warrantless seizure violated the Fourth Amendment and that seizure without adequate notice and hearing violated the due process clause of the Fifth Amendment, plaintiff seeks to enjoin the defendant and his agents from depriving him of the possession and use of his automobile, and from releasing the automobile to any other person or governmental agency. Plaintiff asks the court to declare unconstitutional, both as applied and on its face, 49 U.S.C. § 782 and the regulations issued pursuant thereto establishing the procedures for seizure, forfeiture, and remission and mitigation of penalties. The plaintiff asks for damages in the amount of $5,000.00, and a declaration that he is not liable for costs incurred by defendant in the seizure and storage of his vehicle, nor for the costs of the lawsuit. Jurisdiction is invoked under 28 U.S.C. §§ 1346(a)(2), 1355, 1356, 2201, 2202, 2282, 2284. The plaintiff has withdrawn his class action allegations and prayers.

sess any "contraband article" in or upon the person of anyone in or upon any vessel, vehicle, or aircraft; or to use the latter to facilitate transportation of any "contraband article." The term "contraband article" is defined to include, "(2) Any firearm, with respect to which there has been committed any violation of any provision of the National Firearms Act or any regulation issued pursuant thereto; . . . ."

Under 26 U.S.C. § 5849, provisions relative to firearms currently codified at 26 U.S.C. §§ 5801–5872 are comprehended in a statutory reference to the "National Firearm Act." A Molotov cocktail would be a "destructive device" under 26 U.S.C. § 5845(f) and hence a "firearm". Its possession or interstate transportation in violation of the various tax and registration provisions would be illegal. 26 U.S.C. § 5861. Any firearm involved in any such violation is subject to forfeiture. 26 U.S.C. § 5872.

Plaintiff was not, so far as appears, prosecuted under the National Firearm Act; however, it would appear that devices seized on July 19, 1972 were sent by the police and Treasury Agents to a central registry maintained under 26 U. S.C. § 5841, and a report received showing no evidence of compliance with the Act's registration provisions.

2. Pursuant to administrative procedures established in 26 C.F.R. §§ 172.25, 172.-26, 172.35–45.

The matter comes before us after a consolidated hearing of plaintiff's motion for preliminary injunction and the merits. F.R.Civ.P. 65(a).

## II

██ We dispose summarily of the government's jurisdictional arguments. Plaintiff attacks broadly both the constitutionality of the seizure and of the allegedly inadequate procedures, administrative and judicial, to contest it. He has standing and his contentions are not insubstantial. We plainly have "jurisdiction" (see especially 28 U.S.C. § 1346(a)(2)), and we see no reason to insist that he exhaust remedies the alleged inadequacy and untimeliness of which are cornerstones of his claims. See Jaekel v. United States, 304 F.Supp. 993 (S.D.N.Y.1969).

## III

█ Plaintiff argues that seizure of his automobile without warrant or other legal process while in custody of the police some 16 days after it had allegedly been used to transport a contraband article violated the Fourth Amendment, which provides,

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

██ Plaintiff's position is patently reasonable. Although holding contrary to a similar contention in 1962, this Circuit then stated, "If, in answering this question, we were able to write on a clean slate, much could be said for the position of requiring a warrant as a prerequisite to seizure of property in a forfeiture proceeding." Interbartolo v. United States, 303 F.2d 34 (1st Cir. 1962). The Fourth Amendment is not limited to protection against the unreasonable search of one's house, room or automobile. It speaks of the right of the people "to be secure in their persons . . . and effects, against unreasonable searches and seizures." The same reasons which, absent an emergency, require an officer to secure a warrant before searching private property would seem *a fortiori* to apply where he is to seize private property. The purpose of the warrant is to assure that the decision whether or not there is probable cause to search (or seize) be made

"by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the [Fourth] Amendment to a nullity . . ." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). See also Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). Cf. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1966).

Indeed so clear is the logic requiring a warrant before seizure of a private automobile (absent exceptional circumstances), that one is tempted to start with that premise, and to turn to the more difficult question, also raised here, as to whether a warrant is enough, under the due process provisions of the Fifth Amendment, to authorize the seizure of an automobile not contraband *per se*. Compare Pearson Yacht Leasing Company v. Luis Torres Massa, Civil No. 1018–72, District of Puerto Rico, March 29, 1973. We do not, however, need to reach that question, and shall here assume, without deciding, that the mobility of automobiles and the practicalities of law enforcement justify something less than prior notice and opportunity for hearing.

Limiting ourselves to the Fourth Amendment, and the question of a warrant, we are, of course, confronted with

*Interbartolo, supra,* about which Chief Judge Aldrich said, "Whether this case was correctly decided or not, it represents the general view of the circuits." Berkowitz v. United States, 340 F.2d 168, 174 (1st Cir. 1965). The court in *Interbartolo* upheld a forfeiture following the warrantless and otherwise illegal seizure of an automobile which had been used to transport wagering slips and apparatus.

*Berkowitz, supra,* which was decided in this Circuit three years after *Interbartolo,* did not overrule *Interbartolo* but refused to extend it.[3] In *Berkowitz,* the question was whether money seized pursuant to an illegal arrest could be declared forfeit in a subsequent libel proceeding. The court held that otherwise forfeitable property seized only by virtue of a direct invasion of constitutional rights could not be declared forfeit. The majority said, at 174,

> "We think the answer clear, not because it would be unauthorized or unconstitutional but because it would be attaching too great a premium upon unconstitutional conduct in this instance."

The majority distinguished *Interbartolo* as standing for the proposition that "the illegality of a seizure, without warrant, of personalty left unattended on a public street, where knowledge of its existence, and of its illegal character or, more exactly, use, was discovered by entirely lawful means, did not sufficiently taint the government's claim" [so as to prevent a forfeiture].

At least today, the distinction seems to us to be doubtful. If an illegal arrest taints the fruits of the search incident thereto so severely as to prohibit their forfeiture, we do not see how an unauthorized seizure without warrant or legal process of property not contraband *per se* can lead to a different result. (There was no evidence that the unattended automobile in *Interbartolo* had been abandoned.)

Moreover, since *Interbartolo,* the Supreme Court has reiterated that a forfeiture proceeding is criminal, not civil, hence plainly subject to the Fourth Amendment. One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); see United States v. U. S. Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1970). In *One 1958 Plymouth Sedan,* contraband liquor seized in an unconstitutional search of an automobile had been used as evidence to sustain the seizing of the automobile pursuant to state forfeiture laws. The state court had held that the exclusionary rules in Mapp v. Ohio, 367 U.S. 643, 657, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961), did not apply because the automobile forfeiture proceeding was civil in nature. In holding that the exclusionary rules did apply, the Supreme Court pointed out that the automobile, though termed "contraband", was "quite different."

> "There is nothing even remotely criminal in possessing an automobile. It is only the alleged use to which this particular automobile was put that subjects Mr. McGonigle to its possible loss . . . This distinction between what has been described as contraband *per se* and only derivative contraband has indeed been recognized by Pennsylvania itself . . ." *One 1958 Plymouth Sedan, supra,* 380 U.S. at 699, 85 S.Ct. at 1250.[4]

---

3. One member of the *Berkowitz* court suggested at p. 171 that *Interbartolo* might have "a different approach" from that adopted in his opinion, and, insofar as not distinguishable, "it cannot stand as against the current of constitutionalism. . . ."

4. Insofar as the government attempts to rely on the ancient fiction that the automobile itself was a "guilty" object, being an instrumentality of a crime, and hence forfeitable without regard to the guilt (or rights) of its owner, *Plymouth Sedan* and United States v. U. S. Coin & Currency, *supra,* 401 U.S. at 719–721, 91 S.Ct. 1041 seem to us to dispose of the contention.

Thus were we to sustain the present warrantless seizure, we would be holding that an automobile could itself be seized in the unbridled discretion of an officer although, under *One 1958 Plymouth Sedan, supra*, had the same officer merely searched the same automobile without a warrant, any fruits of his search (for example, a Molotov cocktail) would have to be suppressed as evidence in a future forfeiture proceeding involving the automobile. If there is any logic to such a result, we fail to see it. The right of the automobile owner not to have it searched is no more worthy of protection than his right not to have it seized without legal procedure.

We accordingly hold that the seizure of plaintiff's automobile without, at very least, an appropriate warrant from a judicial officer violated the Fourth Amendment. The initial seizure being unconstitutional, it would be "attaching too great a premium" upon such conduct to permit the government now to retain the vehicle. *Berkowitz, supra,* 340 F.2d at 174.[5] See also John Bacall Imports, Ltd. v. United States, 287 F.Supp. 916 (C.D.Cal.1968); United States v. One 1971 Ford Truck, 346 F.Supp. 613 (C. D.Cal.1972).

We cannot improve upon the language in *Interbartolo* itself:

"We believe that the obligation of requiring government agents to procure warrants, at least in the circumstances presented here [as distinguished from seizure incident to a valid arrest or in flagrante delicto], before seizing vehicles would work no undue hardship on law enforcement officials and would more closely accord with our traditional concepts of subjecting official seizure of private property to some kind of judicial scrutiny. The alternative to this, under the situation as presently obtains, permits government agents to summarily sweep automobiles off the streets without any legal process, so long as at one time, however remote, those officials believe that the vehicle was used in furtherance of an illicit or proscribed activity. The *ipse dixit* of the officer or the agent is all that is required. However, since infallibility or omniscience is scarcely expected, the official may well be wrong and the car which is seized might well belong to an entirely innocent person. Of course, in that instance, the owner will undoubtedly have his automobile returned to him. However, in the interim, the predictable harassment and inconvenience is ominously apparent. To at least attempt to forestall this situation, at least in a non-emergency situation, it is not, in our judgment, asking too much that government agents secure legal process before proceeding to seize private property." 303 F.2d pp. 37–38.

We emphasize, however, as did Judge Aldrich in *Berkowitz, supra,* 340 F.2d at 174, that property the possession of which is *per se* contrary to public policy belongs in a different category from the automobile in question. As the Supreme Court said in *One 1958 Plymouth Sedan, supra*, there is nothing criminal about possessing an automobile. Only its alleged use may make it subject to forfeiture. It is quite different from property like weapons and illegal stills. Nothing we say here is to intimate that contraband weapons, including Molotov cocktails, are immune from summary seizure. We merely hold that before seizing vehicles and other items of *derivative* contraband, the forfeitable nature of which often depends on the making of delicate judgments about previous

---

5. Our holding is consistent with the rule of the Third Circuit from 1950 until 1963. United States v. Plymouth Coupe, 182 F.2d 180 (3rd Cir. 1950) overruled in United States v. $1,058.00 in United States Currency, 323 F.2d 211 (3rd Cir. 1963), holding at 212–13, that "contraband, although unlawfully seized, may nevertheless be forfeited." This was the same principle later rejected, at least in part, in *Berkowitz, supra. Cf. One 1958 Plymouth Sedan, supra; U. S. Coin & Currency, supra.*

facts and circumstances, the agent must first procure a warrant except in those established circumstances where a warrant would not be required to make a search. The circumstances justifying searches, and by analogy seizures, without warrant are set forth in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Here we are aware of no circumstances, the vehicle being in the control of the police, which would have remotely precluded the timely securing of a warrant. Authority sufficient for the issuance of an appropriate warrant is found in Rule 41(b)(2) and (c), Fed.R.Crim.Proc.

## IV

Because the resolution of the Fourth Amendment issue is dispositive of the case, we leave unresolved the further issues raised by plaintiff concerning the constitutionality of the statute and regulations under the due process provisions of the Fifth Amendment. Since 49 U.S.C. § 782 is silent on the subject of a warrant, and we are not disposed to assume that Congress intended a seizure to take place other than in compliance with the Fourth Amendment, we do not view this decision as holding that 49 U.S.C. § 782 is itself unconstitutional. We hold merely that the warrantless seizure by the agent was unconstitutional in these circumstances.

## V

It is hereby ordered that the government forthwith return plaintiff's automobile to him (serial no. 9H6Q102894) free of any costs or charges which may have been incurred by the defendant in the seizure, towing and storage of the vehicle, and free of any costs incurred in any administrative proceeding concerning the automobile.

Further proceedings in this case, for damages or otherwise, are submitted to the drawing judge for hearings or other appropriate action.

So ordered.