**UNITED STATES of America, Plaintiff, Appellant,**

v.

**ONE 1972 CHEVROLET NOVA, Vehicle I. D. No. 1X27D2W125901, Defendant, Appellee.**

No. 77–1039.

United States Court of Appeals, First Circuit.

Argued April 7, 1977.

Decided Aug. 3, 1977.

---

William A. Brown, Asst. U. S. Atty., Chief, Civ. Div., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for plaintiff, appellant.

Constance V. Vecchione, Brockton, Mass., with whom William D. Crosby, P. C., Brockton, Mass., was on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, MARKEY *, Chief Judge.

COFFIN, Chief Judge.

The United States here appeals from an order dismissing its action to have a 1972 Chevrolet Nova forfeited for having been used to transport 350 grams of hashish. The district court denied the government's claim because it believed that the government's failure to procure a warrant before seizing the automobile precluded the forfeiture. We reverse.

* Of the Court of Customs and Patent Appeals, sitting by designation.

The basic facts are not disputed. On October 5, 1972, a United States Customs Opener Verifer in New York discovered what he thought was hashish in a parcel which had been sent from Belgium to Gary Perkins, 11 Elmview Terrace, Brockton, Massachusetts. After tests were performed establishing that the package did in fact contain 350 grams of hashish, the parcel was forwarded to the Brockton, Massachusetts post office. The federal customs agents assigned to the case then set up a "controlled delivery" of the parcel.

On November 24, 1972, at approximately 3:00 p.m., the agents attempted to deliver the package to 11 Elmview Terrace. Because Perkins was not at home and because no one there would accept the package on his behalf, the agents left a notice, informing him of the arrival of the parcel and stating that he could pick up the package at the Brockton post office any time prior to six o'clock that evening. The agents then returned to the post office and awaited Perkins' arrival. At approximately 5:10 p.m., Perkins appeared and took the package. The agents followed him and observed him place the parcel in the defendant 1972 Chevrolet Nova, drive the car to 11 Elmview Terrace, park the car on the public street in front of the house, remove the package from the car, and carry the parcel into the house.

The agents, who had procured a search warrant earlier that day, thereupon entered the house, seized the parcel, searched the house, and arrested Perkins. At 6:15 p.m., approximately twenty to thirty minutes after Perkins had been taken into custody, the agents realized that the automobile was subject to forfeiture and should be seized. Because the agents did not know how many sets of keys or users the car had and believed that the car, which was still on the public street, could have been driven away by anyone, they did not wish to delay the seizure until a warrant could be procured, and they seized the car summarily. Formal forfeiture proceedings were thereafter instituted against the car.

The government's forfeiture complaint initially relied upon three different statutes: 19 U.S.C. § 1595a (forfeiture of vehicle used in the subsequent transportation of articles which were unlawfully introduced into the United States), 21 U.S.C. § 881 (forfeiture of vehicle used to transport controlled substances that have been acquired in violation of the act), and 49 U.S.C. §§ 781, 782 (forfeiture of vehicle used to transport narcotic drugs that are possessed with intent to sell or that were acquired in violation of federal law). For reasons which will be noted, the government subsequently "disavowed" any reliance on 21 U.S.C. § 881.

The sole issue in this appeal is whether the warrantless seizure of the automobile, which the federal officials had probable cause to believe had been used to transport drugs and, thus was subject to forfeiture, precludes the government from thereafter having the vehicle forfeited. Analytically, two separate questions are posed. Was the warrantless seizure violative of federal law? If it was, should the unlawful act be remedied by precluding the government from maintaining its forfeiture claim? We need only address the first.

Several decisions in this circuit are pertinent. The first significant case is *Interbartolo v. United States,* 303 F.2d 34 (1st Cir. 1962). There, this court was presented with the issue whether a vehicle, which was summarily seized by federal officers from a public street some 17 days after its alleged illegal use, may be forfeited. While we thought it inconsistent with our traditions to permit "government agents to summarily sweep automobiles off the streets without any legal process so long as at one time, however remote, those officials believe the vehicle was used" illegally, *id.* at 37, we felt bound by Supreme Court and other decisions suggesting that the warrantless character of the seizure will not taint the government's forfeiture claim. It bears emphasizing that, although we expressed great reservations about the result in that case, we did suggest that, even if the warrant requirement applied, there would be exceptions to it in emergency and perhaps other circumstances. *Id.* at 37 n. 4 & 38.

In *Berkowitz v. United States,* 340 F.2d 168, 174 (1st Cir. 1964), the question was whether money seized pursuant to an illegal arrest could be declared forfeited in a subsequent libel proceeding. We held it could not, reasoning that a contrary result would place too great a premium on unconstitutional conduct. The majority of the court was careful to distinguish *Interbartolo,* which it read as standing for the proposition that "the illegality of a seizure, without a warrant, of personalty left unattended on a public street, where knowledge of its illegal character or, more exactly, use, was discovered by entirely lawful means, did not sufficiently taint the government's claim [so to prevent a forfeiture]". *Id.* at 174. (Aldrich, C. J., concurring for himself and Judge Woodbury.) All concede that, if *Berkowitz's* interpretation of *Interbartolo* controls, the government may have the 1972 Chevrolet Nova forfeited, for whether or not the warrantless seizure was proper, the government here acquired its knowledge of the vehicle's illegal use through lawful channels. *Cf. Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The critical issue for the district court was whether *Interbartolo* is still good law. In concluding that it is not, the district court relied upon *Melendez v. Shultz,* 356 F.Supp. 1205 (D.Mass.) (three-judge court), appeal dismissed for lack of jurisdiction, 486 F.2d 1032 (1st Cir. 1973). The *Melendez* court thought that *Berkowitz's* distinction of *Interbartolo* was dubious; its view was that if an illegal arrest taints the fruits of a search incident thereto so severely as to prohibit their forfeiture, a warrantless seizure of property should have the same effect. Noting also *Interbartolo's* strong reservations about its holding, the *Melendez* court held that "before seizing vehicles and other items of derivative contraband, the forfeitable nature of which often depends on the making of delicate judgments about

previous facts and circumstances, the agent must first procure a warrant except in those established circumstances where a warrant would not be required to make a search." *Id.* at 1210–11. It thus implicitly held that *Berkowitz* had overruled *Interbartolo.*

The *Melendez* decision, while persuasive authority, is of course not binding on this court. At some point, we may have to decide whether *Berkowitz* overruled *Interbartolo* or whether, apart from *Berkowitz,* *Interbartolo* should continue to be followed. This case, however, does not require that we face that question. *Melendez* indicated that warrantless seizures are constitutionally permissible in those established situations in which a warrant would not be required to conduct a search. Since the case at bar falls within such an established exception—that pertaining to automobiles on public streets—we may dispose of the federal constitutional dimensions of this case on the ground that there has been no Fourth Amendment violation.

■ It has long been the rule that automobiles on the public highways may be searched without a warrant, at least when (1) there was probable cause to believe that the car contains articles the officers are entitled to seize, (2) there was a reasonable likelihood that the vehicle could or would be moved out of the locality if the search did not occur within a short time after the car had been discovered, and (3) the probable cause was not discovered until so late a time as to prevent the officers from securing a warrant earlier. *See Cardwell v. Lewis,* 417 U.S. 583, 596–99, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (dissenting opinion);[1] *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers v. Mahoney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Haefeli v. Chunoff,* 526 F.2d 1314 (1st Cir. 1975). Although it might be thought that different standards

---

1. The Justices divided 4:4 on the Fourth Amendment issue in *Cardwell,* and the dissenting opinion states the narrower view as to when warrantless searches are permissible. Because the seizure in this case was constitutional under the dissent's test, we need not consider whether the automobile exception might have the broader scope ascribed to it by the *Cardwell* plurality opinion.

would apply to automobile seizures than to automobile searches, eight justices have indicated that the same criteria apply, *Cardwell v. Lewis, supra* ; and the established tests thus apply equally to pre-forfeiture automobile seizures. *See United States v. McCormick,* 502 F.2d 281, 287 (9th Cir. 1974); *United States v. White,* 488 F.2d 563, 564–65 (6th Cir. 1973); *Sirimarco v. United States,* 315 F.2d 699 (10th Cir. 1963); *cf. United States v. Capra,* 501 F.2d 267, 278–80 (2d Cir. 1974).[2]

■ Under these standards, the warrantless seizure of the 1972 Chevrolet Nova was proper. No one disputes that the car was known to have been used to transport 350 grams of hashish—and indeed, the district court so found—and that the agents therefore had probable cause to believe the car was subject to forfeiture. Since, following Perkins' arrest, the car was on a public street under conditions in which it was quite possible for someone to remove it, it was not practicable to secure a warrant before taking possession of it. And it was not the case that the agents possessed the probable cause to seize the car at a prior time when it would have been feasible to obtain a warrant. They did not learn of the particular car's illegal use until very shortly before the seizure, and they had no reason to suspect that any car might be so used until 3:00 p.m., when the arrangement was made for Perkins to pick up the package at the Brockton post office, and when, given Perkins' possible imminent arrival, it would not have been feasible to obtain a warrant.

■ Although we hold the seizure of the car did not violate the Fourth Amendment, this is not the end of the case. The owner of the car also contends that the seizure violated a federal statute, 21 U.S.C. § 881(b), which provides that "any property subject to forfeiture to the United States under this title may be seized by the Attor-

ney General upon process issued . . . by a district court . . . except that seizure without such process may be made when (1) the seizure is incident to an arrest or a search under a search warrant . . . or (4) the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this subchapter." The owner reads § 881(b) as making a warrant a prerequisite to the seizure of any property that is subject to forfeiture under § 881(a), unless one of the enumerated exceptions is applicable. Noting that the government disavowed any reliance on any provision of § 881 below, he assumes that the government is barred from relying upon any exception thereto on appeal. Since he also assumes that the 1972 Chevrolet Nova was subject to forfeiture under § 881(a), he urges that the warrantless seizure was unlawful. His view naturally is that the remedy for this violation should be to bar the government's forfeiture claim.

We shall assume that the government is precluded from relying upon § 881 as authority for the seizure. While we also recognize that *Melendez* supports the view that the § 881(b) violation should be remedied by barring any forfeiture claim based on § 881(a), we need not decide this question. The reason the government so cavalierly disavowed any reliance upon § 881 was that it believed that the warrantless action was authorized by both 19 U.S.C. § 1595a and 49 U.S.C. §§ 781, 782. While the issue is not without difficulty, we conclude that this basic position is correct.

We focus on § 1595a, which provides that property which facilitates violations of customs laws "shall be seized". This section does not require that seizures ever be made pursuant to warrants, and there is reason to believe that Congress actually intended warrantless seizures by customs officials. Section 1595, which immediately precedes § 1595a in title 19, provides that, under

---

**2.** There is language in the Supreme Court's recent decision in *G. M. Leasing Corp. v. United States,* 429 U.S. 338, 350, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), suggesting that automobiles may always be seized from public places when there is probable cause to believe that the government's property interest therein is superior to the owner's. Since *G. M. Leasing* may have turned in large part on its unique facts and its having been a case involving a tax levy, we decline here to rely upon it as further expanding the automobile exception.

certain circumstances, customs officials must procure search warrants. While drawing inferences from Congressional silence is risky business, it is reasonable, given the explicit consideration of a related problem in § 1595, to suppose that, had Congress believed seizure warrants should be required as well, it would have expressly mandated them.

In any case, § 1595a does not require seizure warrants. Since there was no constitutional problem with the warrantless seizure of the 1972 Chevrolet Nova, it was lawful under § 1595a unless the warrant requirement of 21 U.S.C. § 881(b) applies whenever a seizure could have been made thereunder. Although we appreciate that it is a little anomalous that one department of the executive branch should be permitted to seize certain property without a warrant when a second branch would be prohibited from doing so, we see no basis for reading the warrant requirement of § 881(b) into § 1595a.

On its face, § 881(b) has no applicability to the activities of customs officials. It applies only to seizures by the Attorney General or his delegatees, see 21 U.S.C. § 871(a), who presumably will be employees of the Drug Enforcement Administration (DEA). Cf. id. § 878. The customs laws, of course, are administered by the Secretary of the Treasury, who appoints the customs officials who enforce them, see 19 U.S.C. § 1401(l). Unless § 881(b)'s reference to the Attorney General is read expansively to include each department of the executive branch, it can have no consequences for the warrantless seizure which here occurred.

There are strong reasons both in the text of § 881 and in policy not so to construe § 881(b). In § 881, which was enacted well after § 1595a, Congress explicitly considered the extent to which the duties imposed by law on certain departments of the executive branch should apply to others: § 881(d) incorporates the provisions of title 19 governing seizures and forfeitures. While, as we noted, a court cannot confidently draw inferences from the silence of Congress, here we think it can be said that if Congress had desired § 881(b)'s warrant requirement to apply to employees of the Department of the Treasury, it would have said so.

What is equally significant is that it is entirely sensible for customs officials to be free of whatever additional duty § 881(b) imposes. That provision applies only to seizures of property that is forfeitable because it was used in connection with violations of the laws regulating the use of drugs. Customs officials, unlike DEA agents, are of course under a duty to seize property for other reasons. For example, they are to seize any vehicle that facilitates the illegal importation of anything into the United States, be it drugs or silk stockings. We can think of no reason why customs officials should generally be free to act without a warrant in effecting such seizures but should be required to comply with § 881(b)'s warrant requirement whenever the substance that was illegally imported happens to have been a type of drug. Therefore, because we see no evidence that § 881(b) was intended to apply to § 1595a and because we see no irreconcilable inconsistency between the two provisions as here construed, cf. United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181 (1939), we hold that seizures taken by customs officials pursuant to § 1595a are not subject to whatever warrant requirement emanates from § 881(b).

We note, moreover, that even if the warrant requirement of § 881(b) were read into § 1595a, it is doubtful that it would aid the owners of the car. The government could, notwithstanding its disavowal of § 881, rely upon the exceptions to § 881 insofar as § 881(b) has been incorporated into § 1595a. And one of those exceptions, § 881(b)(4)—permitting warrantless seizures when there is "probable cause to believe that the property has been used or is intended to be used in violation of this subchapter"—seems to apply. We would think the 1972 Chevrolet Nova would be deemed "property used in violation . . . of this subchapter".

■ Since § 881(b)(4) creates an exception that threatens to swallow § 881(b)'s warrant requirement, we would be reluctant to give it an absolutely literal reading. But we think § 881(b)(4) authorizes war-

**470**

rantless action at least in those cases in which the seizure followed immediately after the occurrence that gave the federal agents probable cause to believe § 881(a) authorized a forfeiture *and* in which the exigencies of the surrounding circumstances made the requirement of obtaining process unreasonable and unnecessary. *See O'Reilly v. United States,* 486 F.2d 208, 214 (8th Cir.) (Lay, J., dissenting), *cert. denied,* 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973). This test seemingly would be met in any case in which an automobile seizure passes the *Caldwell* dissent's test, *cf. United States v. Capra, supra,* 501 F.2d at 280, and, for the reasons stated above, we think it would be satisfied here.

While the district court did not actually state that the car would have been declared forfeited under § 1595a if the court had believed the warrantless seizure of the car had been proper, in view of the one finding the court made, such a result is statutorily required. *See generally United States v. One Clipper Bow Ketch "Nisku",* 548 F.2d 8 (1st Cir. 1976). We thus reverse the judgment of the district court and remand so that it may prepare an appropriate order declaring that the vehicle has been forfeited to the United States. No costs.

*So ordered.*