# Assertion of Jurisdiction by the United States Over Foreign Vessels Seized Pursuant to a Special Arrangement

The United States may structure a Special Arrangement so as to enable it to assert jurisdiction over a vessel seized on behalf of a foreign state, once the foreign state waives its jurisdiction.

Once the United States asserts jurisdiction over a seized vessel, it must comply with the requirements of the Fourth Amendment.

April 15, 1980

## MEMORANDUM OPINION FOR THE DEPUTY ASSISTANT ATTORNEY GENERAL, CRIMINAL DIVISION

This responds to your inquiry whether the United States could assert jurisdiction over foreign vessels seized pursuant to a Special Arrangement if the flag state decided not to prosecute the vessel after the United States had seized the boat on behalf of the flag state. We believe that the Special Arrangement may be stuctured so that the United States can assert jurisdiction when the flag state refuses to prosecute. Once the flag state declines to continue to exercise its jurisdiction, the United States can assert jurisdiction, obtain a warrant to search and seize the vessel, and institute forfeiture proceedings.

As we noted in our memorandum to the Deputy Legal Adviser of February 19, 1980* on this general subject, the President is relatively free to negotiate the details of a jurisdictional agreement with a foreign state. *Williams* v. *Rogers,* 449 F.2d 513, 522–523 (8th Cir. 1971), *cert. denied,* 405 U.S. 926 (1972). Jurisdiction under these agreements may be exclusive, concurrent, or a matter of one party having primary jurisdiction which it may then choose to waive. *Holmes* v. *Laird,* 459 F.2d 1211, 1212, 1214 (D.C. Cir. 1972) (jurisdiction reasserted after initial waiver); Art. VII(3)(c), Agreement Between the Parties to the North Atlantic Treaty Regarding the Status of Their Forces, June 19, 1951, 4 U.S.T. 1792, T.I.A.S. No. 2846 (NATO SOFA); Art. XVII, Administrative Agreement Under Article III of the Security Treaty Between the United States of America and Japan, Feb. 28, 1952, 3 U.S.T. 3342, T.I.A.S. No. 2492 (Administrative Agreement). For example, under the Administrative Agreement with Japan, the United States had "exclusive

---

*NOTE: The text of the February 19, 1980 memorandum appears in this volume at p. 406. Ed.

jurisdiction over all offenses" committed by its soldiers and civilians in Japan. Art. XVII, § 2. However, the United States could waive its jurisdiction at the request of the Japanese government. *Id.*, § 4. "Upon such waiver, Japan may exercise its own jurisdiction." *Id.* Not until the United States waived its jurisdiction, however, could Japan assert its own jurisdiction.

Similarly, we believe that the United States could enter into an agreement that would preclude assertion of its jurisdiction until the flag state waived its jurisdiction. The agreement could be a two-tier arrangement: first, there would be an initial seizure on behalf of the flag state. While the United States held the ship in custody for the flag state, the Special Arrangement would permit only the flag state to assert jurisdiction. However, if the flag state decided that it did not wish to proceed against the ship, it could decline to continue its jurisdiction. We would recommend that the Special Arrangement include a specific time limit for this period to reduce the likelihood that the ship remains unprocessed for any length of time.

The flag state's primary jurisdiction must be made clear. The Special Arrangement is premised on the flag state's underlying jurisdiction when the United States seizes the ship. The Special Arrangement should state that we would normally expect the flag state to continue to exercise that jurisdiction by assuming custody promptly. However, in order to permit flexibility, the Special Arrangement could include a second tier: assertion of jurisdiction by the United States when—and only when—the flag state renounces its jurisdiction.[1] It should be made clear that the United States does not exercise concurrent jurisdiction under the Special Arrangement. Only when the flag state refuses to exercise its criminal jurisdiction any longer may the United States exercise its own.

The Special Arrangement should state the precise method by which the United States will inform the flag state *and third parties* that it is asserting jurisdiction. Although such detail may not be necessary, *see* Administrative Agreement, *supra*, the danger that a forfeiture proceeding will be dismissed because of improper notice or delay, especially given the courts' willingness to read the statutes narrowly in order to protect innocent owners, is reason enough to use special caution in drafting this Special Arrangement.[2]

When the United States does assert jurisdiction, it should make sure that the formal seizure of the ship is done without violating the Fourth Amendment. Evidence which is obtained in violation of the Fourth

---

[1] The Special Arrangement should be drafted to ensure that there is no gap between the renunciation of jurisdiction by the flag state and its assertion by the United States. *See* 33 C.F.R. § 604–8 (1979).

[2] In addition, the more precise the Special Arrangement is, the easier it will be to convince a court that the Executive has considered all the "details" for which it is responsible—including when United States courts should be allowed to review the proceedings.

Amendment may not be relied on to sustain a forfeiture. *One 1958 Plymouth Sedan* v. *Pennsylvania,* 380 U.S. 693 (1965).[3] Some courts have permitted a warrantless seizure when there is probable cause to believe the object is subject to forfeiture. *See United States* v. *Pappas,* 600 F.2d 300 (1st Cir. 1979); *United States* v. *Sink,* 586 F.2d 1041, 1048 (5th Cir. 1978); *cert. denied,* 443 U.S. 912 (1979). However, other courts require exigent circumstances. *United States* v. *McCormick,* 502 F.2d 281 (9th Cir. 1974). This might be hard to show if the ship is in the custody of the United States and its crew has been arrested or removed. Although several courts have held that forfeiture statutes do permit summary seizure, the Fifth Circuit is still "determin[ing] the scope" of the forfeiture laws. *Sink, supra,* 586 F.2d at 1048 (5th Cir. 1978).[4] We would recommend that a warrant be obtained for the search and seizure.

The United States may take advantage of a seizure made by anyone on its behalf by adopting the act and proceeding to enforce the forfeiture by legal process. *The Caledonian,* 17 U.S. (4 Wheat.) 100, 103 (1819). *United States* v. *Story,* 294 F. 517 (5th Cir. 1923). However, here the original seizure, even though made by a United States officer, will be on behalf of a foreign nation.[5] Although seizures by citizens on behalf of a state government may be adopted by the federal government, *In re Commercial Investment Trust Corp.,* 31 F.2d 494 (W.D. N.Y. 1929); *United States* v. *One Studebaker Seven-Passenger Sedan,* 4 F.2d 534 (9th Cir. 1925); *United States* v. *Story, supra,* a court might decide that this line of cases is distinguishable. Such adoption might also raise questions as to whether the original seizure was purely on behalf of the flag state—which might lead to renewed questions about whether there was concurrent jurisdiction over the ship.[6]

We recommend that the United States obtain a warrant to seize the ship, using the testimony of the officer who makes the original seizure to establish probable cause.[7] If this is done as promptly as possible after

---

[3] The forfeiture may still proceed, however, if it can be proven by untainted evidence. *United States* v. *One (1) 1971 Harley-Davidson Motorcycle,* 508 F.2d 351 (9th Cir. 1974); *United States* v. *One 1976 Cadillac Seville, Vin,* 477 F. Supp. 879 (E.D. Mich. 1979); *Mayo* v. *United States,* 413 F. Supp. 160, 162 (E.D. Ill. 1976).

[4] The First Circuit, which includes the port of Boston within its jurisdiction, has issued conflicting signals on the question whether an unauthorized seizure bars a subsequent forfeiture. After stating that the illegality of the underlying seizure is irrelevant, *Interbartolo* v. *United States,* 303 F.2d 34 (1st Cir. 1962), reaffirming *Strong* v. *United States,* 46 F.2d 257 (1st Cir. 1931), it questioned, without deciding, whether *Interbartolo* was still good law. *United States* v. *One 1972 Chevrolet Nova,* 560 F.2d 464 (1st Cir. 1977); *Berkowitz* v. *United States,* 340 F.2d 168 (1st Cir. 1965). Then in *United States* v. *Pappas,* 600 F.2d 300 (1st Cir. 1979), the Court limited *Berkowitz.* The district courts reflect that confusion. Compare *United States* v. *One 1975 Pontiac LeMans,* 470 F. Supp. 1243, 1247 (D. Mass. 1979) (citing *Interbartolo*), and *United States* v. *F/V Taiyo Maru,* 395 F. Supp. 413 (D. Maine 1975), with *Melendez* v. *Shultz,* 356 F. Supp. 1205 (D. Mass. 1973).

[5] We note that the arresting officer should be aware that his original seizure may be the basis of later action by the United States and therefore the subject of scrutiny by American courts.

[6] We would also recommend that the Special Arrangement specifically state that the flag state cannot reassert its jurisdiction at a later date.

[7] Any drugs which are no longer on board should also be seized on behalf of the United States.

the flag state renounces jurisdiction, it should foreclose an argument that the seizure of the ship was improper.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*