**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert C. McCORMICK, Defendant-Appellant.**

**No. 73-2252.**

United States Court of Appeals, Ninth Circuit.

July 17, 1974.

Rehearing Denied Sept. 16, 1974.

Leonard N. Kesselman (argued), Los Gatos, Cal., for defendant-appellant.

James H. Daffer, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY and WALLACE, Circuit Judges, and EAST,* District Judge.

## OPINION

DUNIWAY, Circuit Judge:

McCormick was convicted of conspiring to make, possess, sell and otherwise deal in counterfeit Federal Reserve notes, in violation of 18 U.S.C. §§ 371, 471, 472 and 473.

On February 17, 1972, McCormick was arrested at his Mountain View, California, home, pursuant to an arrest warrant. When Secret Service agents arrived to make the arrest, they parked in McCormick's driveway, blocking egress for his automobile, a blue Buick Riviera, which was in the driveway. Between fifteen minutes and one hour after McCormick's arrest, a Secret Service agent drove the Buick to the sub-

basement parking garage of the Federal Office Building in San Francisco. The next day another Secret Service agent searched the car and discovered an enlarged photographic negative of a treasury seal. No warrant was obtained either to seize the car on February 17 or to search it on February 18. McCormick's pre-trial motion to suppress this evidence found in his car was denied. On appeal, he argues, citing Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, that the Secret Service agents should have obtained a search warrant before the seizure and search of his car. We agree and therefore reverse this conviction.

### I. *The question presented.*

The government justifies its seizure and later search of McCormick's automobile solely on the basis of 49 U.S.C. § 782, which provides, in pertinent part, that "[a]ny . . . vehicle . . . which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited. . . . "

49 U.S.C. § 781 provides, in part:

(a) It shall be unlawful (1) to transport, carry, or convey any contraband article in, upon, or by means of any vessel, vehicle, or aircraft; (2) to conceal or possess any contraband article in or upon any vessel, vehicle, or aircraft, or upon the person of anyone in or upon any vessel, vehicle, or aircraft; or (3) to use any vessel, vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article.

(b) As used in this section, the term "contraband article" means—

\*    \*    \*    \*    \*    \*

(3) Any falsely made, forged, altered, or counterfeit coin or obliga-

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

tion or other security of the United States or of any foreign government; or any materal or apparatus, or paraphernalia fitted or intended to be used, or which shall have been used, in the making of any such falsely made, forged, altered, or counterfeit coin or obligation or other security.

■ We do not doubt that, if the seizure of the car on February 17, 1972, was valid, the later search on February 18, 1972, was also valid. Cooper v. California, 1967, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730. There, California police officers seized Cooper's car when they arrested him on a narcotics charge. The seizure of the car was pursuant to Cal. Health and Safety Code § 11611, which provides that any officer making an arrest for a narcotics violation shall seize any vehicle used to store, conceal, transport, sell or facilitate the possession of the narcotics. The officers searched the car where it was stored one week after the seizure, and the evidence seized was introduced at Cooper's trial. The search was upheld. The rationale is as follows:

> Here the officers seized petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. Their subsequent search of the car—whether the State had "legal title" to it or not—was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." United States v. Rabinowitz, 339 U.S. 56, 66 [70 S.Ct. 430, 94 L. Ed. 653]. Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding. Id. at 61–62, 87 S.Ct. at 791.

Assuming the validity of the initial seizure under 49 U.S.C. § 782, we think that this rationale would be applicable to the later search.

However, as the Supreme Court has later made clear, the Court in *Cooper* did not pass upon the legality of the original seizure of Cooper's car. Apparently that question was not presented in the case. Coolidge v. New Hampshire, *supra*, points out that in *Cooper* the Court did not rule on the validity of the statute authorizing the seizure[°]:

> In *Cooper*, the seizure of the petitioner's car was mandated by California statute, and *its legality was not questioned*. The case stands for the proposition that, given an unquestionably legal seizure, there are special circumstances that may validate a subsequent warrantless search. 403 U.S. at 464, n.21, 91 S.Ct. at 2037. (emphasis supplied).

We have several times upheld searches of vehicles seized under 49 U.S.C. § 782. But none of our cases prevents our now considering the constitutional validity of the seizure in this case.

In United States v. Arias, 9 Cir., 1972, 453 F.2d 641, we upheld a subsequent search of a seized car where Arias' car was seized at the time of his arrest and the officers knew, at that time, that the car was being used to facilitate the consummation of a crime (453 F.2d at 643). The case falls within the automobile exception to Fourth Amendment requirements, discussed *infra*.

Our other decisions, Lockett v. United States, 9 Cir., 1968, 390 F.2d 168; Kaplan v. United States, 9 Cir., 1967, 375 F.2d 895; Browning v. United States,

9 Cir., 1966, 366 F.2d 420, and Burge v. United States, 9 Cir., 1965, 342 F.2d 408, were all decided before the decisions of the Supreme Court in Coolidge v. New Hampshire, *supra;* Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; United States v. Robinson, 1973, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; and Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596. To the extent that any of our cases can be read as holding that, in every case, a car can be seized under 49 U.S.C. § 782 without a warrant, so long as probable cause exists, they no longer state good law, for reasons considered hereafter.

For similar reasons, we consider it unnecessary to discuss cases from other circuits dealing with seizures and searches under 49 U.S.C. § 782.[1] Only one of them, United States v. Stout, *supra,* n.1, is a post *Coolidge* case, and it, like our *Arias* case, can be supported under the automobile exception to Fourth Amendment requirements.

II. *The Fourth Amendment applies.*

██ We therefore turn to the validity of the seizure of McCormick's car. We start with the proposition that the Fourth Amendment applies equally to searches and to seizures. It provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This guarantee interposes between citizens and the police a magistrate whose objective evaluation must weigh the "right of the people to be secure" against the need to enforce the law. "When the right of privacy must reasonably yield to the right of search [and

seizure] is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." Johnson v. United States, 1948, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436.

██ A search and seizure question therefore begins with the proposition that "the most basic constitutional rule in this area is that 'searches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.' " Coolidge v. New Hampshire, *supra,* 403 U.S. at 454–455, 91 S.Ct. at 2032, quoting Katz v. United States, 1967, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Unless a warrantless search or seizure meets one of these exceptions, the evidence thereby obtained is inadmissible at trial. Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652.

██ The fact that the agents made the seizure and search pursuant to an act of Congress does not remove that seizure and search from the purview of the *Katz per se* rule. Unless the statute itself falls within one of the exceptions to the warrant requirement, it must yield to the right to be secure against searches and seizures. This is clear from the Supreme Court's decision in Almeida-Sanchez v. United States, *supra,* in which the government's sole justification for a warrantless search of an automobile was a federal statute authorizing the search. The Court held that a statute cannot justify an otherwise unconstitutional search:

Since neither this Court's automobile search decisions nor its administrative inspection decisions provide any support for the constitutionality of the stop and search in the present case, we are left simply with the stat-

1. *See, e. g.,* United States v. Francolino, 2 Cir., 1966, 367 F.2d 1013; United States v. Troiano, 3 Cir., 1966, 365 F.2d 416; United States v. Trotta, 4 Cir., 1968, 401 F.2d 514; Drummond v. United States, 8 Cir., 1965, 350 F.2d 983; Ted's Motors v. United States, 8 Cir., 1954, 217 F.2d 777; United States v. Stout, 10 Cir., 1970, 434 F.2d 1264; Sirimarco v. United States, 10 Cir., 1963, 315 F. 2d 699.

ute that purports to authorize automobiles to be stopped and searched, without a warrant and "within a reasonable distance from any external boundary of the United States." It is clear, of course, that no Act of Congress can authorize a violation of the Constitution. 413 U.S. at 272, 93 S.Ct. at 2539.

In Howard v. United States, 9 Cir., 1970, 423 F.2d 1102, we held that evidence found in a search of a car that was purportedly seized under 49 U.S.C. § 782 should be suppressed. Reversal was for lack of probable cause, and the usual Fourth Amendment tests were applied.

With this background we scrutinize both Section 782 and the seizure to determine whether it falls within an exception to the warrant requirement.

### III. *The incident to arrest exception does not apply.*

The search of McCormick's automobile does not qualify as a search incident to arrest, viz. a search "of the area within the control of the arrestee." United States v. Robinson, *supra*, 414 U.S. 224, 94 S.Ct. 471. We assume that the arrest of McCormick inside his house was valid, so that the first condition of a warrantless search incident to an arrest is met. *Coolidge, supra*, 403 U.S. at 455, 91 S.Ct. 2022.

The leading case in this area is Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, which limits a search incident to arrest to the arrestee's person and "the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763, 89 S.Ct. at 2040. The justification for this exception to the warrant requirement is that the police have the

> need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as . . . the need to prevent the destruction of evidence of the crime— things which might easily happen where the weapon or evidence is on the

accused's person or under his immediate control. Preston v. United States, 1964, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777.

■ These justifications are absent here. Four Secret Service agents and two local police officers raided McCormick's house and immediately placed him under arrest and handcuffed him; his car remained outside in the driveway. Under no circumstances could the car be considered under his "immediate control." Coolidge v. New Hampshire, *supra*, 403 U.S. at 456–457, 91 S.Ct. 2022. *See also* Preston v. United States, *supra*.

### IV. *The automobile exception does not apply.*

The seizure of McCormick's Buick also fails to qualify under the automobile exception to the warrant requirement, which was first announced in Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. In *Carroll*, the Court upheld a federal statute authorizing the warrantless search of an automobile if the arresting officer had probable cause to believe that the automobile was "in the act of" transporting illegal liquor. *Id.* at 144, 45 S.Ct. 280. The Court has read *Carroll* to hold that

> a search warrant [is] unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. . . . [T]he opportunity to search is fleeting. . . . Chambers v. Maroney, 1970, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419.

The justification for a warrantless search and seizure under these circumstances rests on the

> necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile, for contraband goods, *where it is not practicable*

*to secure a warrant,* because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. Carroll v. United States, *supra,* 267 U.S. at 153, 45 S.Ct. at 285 (emphasis added).

■■■ *Carroll* thus authorizes warrantless seizures of automobiles when two factors are present.

1. The arresting officer has probable cause to believe that the automobile contains contraband, and

2. There are exigent circumstances associated with the automoble.

Assuming the officer has probable cause, *Carroll* does not allow him to seize *any* automobile, but only those automobiles which are movable and for which "it is not practicable to secure a warrant." *Id.* "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." Coolidge v. New Hampshire, *supra,* 403 U.S. at 461–462, 91 S.Ct. 2022, 2035.

We therefore proceed to examine the facts in the present case and the statute pursuant to which McCormick's Buick was seized, to determine whether the above two factors were present to authorize a warrantless automobile seizure.

### A. *Probable cause.*

Our examination of the record leads us to conclude that at the time McCormick's car was seized the officers had probable cause to believe that the car *had been* used in the manner denounced in § 781, and so was subject to forfeiture under § 782. However, there was no probable cause to believe that it was being so used at the time of seizure. This, however, does not end the matter; as we have seen, probable cause alone does not justify a warrantless seizure.

### B. *Exigent circumstances.*

■■ ■■ Although the agents had probable cause to believe that McCor-

mick's car had been used to transport contraband, the second *sine qua non* of *Carroll,* exigent circumstances, is here absent. On this aspect of the case, the facts are nearly identical to those of *Coolidge:* Secret Service agents learned that McCormick's Buick had been used to transport contraband two and one-half months before the seizure of the car. The car was parked in the driveway of his house when it was seized and there was no indication that it was *then* being used for any illegal purpose.[2] All that the agents had reasonable cause to believe was that it *had been* so used. Six officers entered the house to arrest McCormick, and he was quickly handcuffed. Moreover, even if he could have gained access to his car, he could not have driven it away, because a police car was blocking the driveway. In *Carroll* and *Coolidge* terms, this automobile more resembled a house than a moving or mobile vehicle. Because there were no exigent circumstances at the time of the seizure, the later search cannot be justified under Chambers v. Maroney, *supra.* "[N]o amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances,'" Coolidge v. New Hampshire, *supra,* 403 U.S. at 468, 91 S.Ct. at 2039, and so the seizure here does not fall within the automobile exception to the warrant requirement.[3]

### V. *The plain view exception does not apply.*

■■■ The seizure of McCormick's car cannot be justified under the "plain view" exception to the warrant requirement, which allows the police to seize evidence or contraband in plain view without a warrant. Coolidge v. New Hampshire, *supra,* places limits on the doctrine. "[P]lain view *alone* is never enough to justify the warrantless seizure of evidence. . . . [E]ven where the object is contraband, . . . the police

---

2. *See also* Coolidge v. New Hampshire, *supra,* 403 U.S. at 461, N. 18, 91 S.Ct. 2022.

3. *See also* United States v. Connolly, 9 Cir., 1973, 479 F.2d 930, 935: "For the automo-

bile exception to apply, the government must show that at the time of the warrantless search the officers had reason to believe that the mobility or exposure of the car made it impracticable to seek a warrant."

may not enter and make a warrantless seizure." 403 U.S. at 468, 91 S.Ct. at 2039 (emphasis original). The Secret Service agents here had ample opportunity to obtain a valid warrant. They knew the automobile's exact description and had probable cause to believe over two months before the seizure that it had been used to transport contraband. In this sense, the present case is governed by *Coolidge* and the plain view exception therefore cannot authorize the seizure of the automobile.

■ The *Coolidge* Court did, however, emphasize that it was not faced with "a case involving contraband. . ." *Id.* at 472, 91 S.Ct. 2022. Can the government argue that Section 782 declares McCormick's automobile itself to be contraband and therefore subject to seizure without a warrant if found in plain view? We think not. There is a difference between the possession of, let us say, narcotics (*see* United States v. Jeffers, 1951, 342 U.S. 48, 54, 72 S.Ct. 93, 96 L.Ed. 59) or an illegal still (*see* Trupiano v. United States, 1948, 334 U.S. 699, 710, 68 S.Ct. 1229, 92 L.Ed. 1663) and the possession of an automobile (*see* One 1958 Plymouth Sedan v. Pennsylvania, 1965, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170). Possession of the former is always illegal; it is contraband *per se*. Possession of an automobile, on the other hand, is not always illegal; it is *derivative* contraband, and only its illegal use makes its possession illegal:

> Both *Trupiano* and *Jeffers* concerned objects the possession of which, without more, constitutes a crime. The repossession of such *per se* contraband by Jeffers and Trupiano would have subjected them to criminal penalties. The return of the contraband would clearly have frustrated the express public policy against the possession of such objects. . . .

It is apparent that the nature of the property here, though termed contraband by Pennsylvania, is quite different. There is nothing even remotely criminal in possessing an automobile.

It is only the alleged use to which this particular automobile was put that subjects Mr. McGonigle to its possible loss. . . . Furthermore, the return of the automobile to the owner would not subject him to any possible criminal penalties for possession or frustrate any public policy concerning automobiles, as automobiles. This distinction between what has been described as contraband *per se* and only derivative contraband has indeed been recognized by Pennsylvania itself in its requirement of mandatory forfeiture of illegal liquor, and stills, and only discretionary forfeiture of such things as automobiles illegally used. . . . We, therefore, do not have a case before us in any way analogous to the contraband involved in *Jeffers* and *Trupiano* and these cases can in no way be deemed to impair the continued validity of *Boyd* [v. United States, 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746] which, like this case, involved property not intrinsically illegal in character. One 1958 Plymouth Sedan v. Pennsylvania, *supra*, 380 U.S. at 699–700, 85 S.Ct. at 1250 (footnotes omitted)

Because McCormick's automobile is not contraband *per se, Coolidge* is still in point and the seizure of the automobile is not justified under the "plain view" exception to the warrant requirement. The seizure of the automobile was therefore unconstitutional and so was the subsequent search. The photographic negative of a treasury seal thereby obtained should have been suppressed.

■■ Unlike the statute in *Almeida-Sanchez, supra,* 49 U.S.C. § 782 is silent on the question of whether a warrant is required. The statute is not unconstitutional on its face; a warrantless seizure made pursuant to it which can be independently justified under an exception to the warrant requirement would not be unconstitutional. We merely hold that before seizing an item of derivative contraband under Section 782, the agent must first obtain a valid warrant except

in circumstances which qualify as an exception to the warrant requirement. *See* Melendez v. Schultz, 356 F.Supp. 1205 (D.Mass.1973).

The judgment of conviction is reversed and the case is remanded for further proceedings consistent with this opinion.

WALLACE, Circuit Judge (dissenting):

I respectfully dissent.

I agree with the majority that if the seizure of the car was valid, the subsequent search was also valid. But I do not feel at liberty to find the seizure invalid. The majority concludes that Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), requires us to suppress the evidence. However, the *Coolidge* Court was never presented with the possibility of a lawful warrantless seizure pursuant to a forfeiture statute and probable cause. The majority seems to read *Coolidge* as excluding such a result simply because the *Coolidge* Court did not mention forfeiture seizures as an exception to the warrant requirement. This construction assumes that the Court was dealing with all possible exceptions whether or not they were in issue in that case. I cannot concur with such an interpretation.

I believe this case is governed by United States v. Arias, 453 F.2d 641, 642–643 (9th Cir. 1972), a post-*Coolidge* case, where we affirmed a similar seizure and search. The majority's attempt to distinguish *Arias* on the basis that the search *could* have been upheld on the basis of the automobile exception does not change the fact that there our court did not do so. The only issue facing us in *Arias* was whether the officers had probable cause to believe that the car had been used to facilitate the transportation of contraband. Arias had argued that "'the facts of this case clearly bring it within the ruling of Howard v. United States, 423 F.2d 1102 (9th Cir. 1970),' that the forfeiture provisions of 49 U.S.C. §§ 781 and 782 cannot vindicate a vehicular search where seizing officers are without 'probable cause . . . .'"

453 F.2d at 643. We distinguished the facts in *Arias* from the facts in *Howard* because the officers had good reason to believe that Arias had used the car in violation of the law. We affirmed Arias' conviction, holding that where the officers have probable cause to believe that the automobile has been used to facilitate the transportation of contraband, a warrantless search following a seizure pursuant to 49 U.S.C. §§ 781 and 782 is valid.

The majority apparently argues that the search in *Arias* was valid not because it was conducted with probable cause that the forfeiture statute had been violated, but because the officers had probable cause and exigent circumstances. If there were exigent circumstances in *Arias,* however, we did not discuss them nor base our holding upon them. Indeed, the *Arias* fact situation indicates that if there were ever exigent circumstances, they no longer existed at the time that the officers conducted the search. Arias had employed a woman to drive a load car from Mexico to her home in Los Angeles. The contraband was discovered at the port of entry and the driver agreed to cooperate in apprehending Arias. The woman drove the load car to her home where she and customs officials waited for Arias to pick up the car. When Arias arrived, he left his station wagon parked at the woman's home and proceeded to drive the load car down the street. Apparently recognizing that he was under surveillance, he returned to the woman's home where he was arrested. There is no indication that he was either in the station wagon or attempting to flee at the time of his arrest. The logical inference is that he was either in the load car or had just gotten out of it.

The station wagon was seized and taken to a federal facility where it was subsequently searched. It is clear from the case that the search was conducted pursuant to the forfeiture statute. We stated:

Although a cursory weapons search of Arias' station wagon yielded negative results, a more thorough probe,

**290**

pursuant to 49 U.S.C. §§ 781 and 782, conducted at a federal facility on Terminal Island disclosed a quantity of red seconal capsules and "marihuana debris" lodged in the vehicle's left rear quarter panel.

453 F.2d at 642–643 (footnotes omitted). There was no warrant for the search and apparently no warrant for the seizure. There were no exigent circumstances justifying the seizure other than the usual concern that an ally might move the car after the officers had left. Once the station wagon had been taken to the federal facility, there was no possibility that the evidence would be destroyed. We upheld the search on the ground that once the officers had probable cause for the seizure, the subsequent search was reasonable under the Fourth Amendment. We did not rely upon any other justification for the search or seizure.

The fact situation in this case is indistinguishable from *Arias*. The officers had probable cause to believe that McCormick had used the Buick to transport contraband. The officers seized the car and drove it to the federal office building where it was subsequently searched. If there were exigent circumstances present in *Arias*, then there were also exigent circumstances present in this case. Unless we are to overrule *Arias*, we are compelled to uphold the search of McCormick's car.

The majority would require a warrant for the seizure and search in this situation because McCormick, following his arrest, could not have gained access to his car. Thus, they conclude, it "more resembled a house than a moving or mobile vehicle." Such a theory appears to me to be inconsistent with the recent teachings of a Supreme Court plurality in a case factually distinguishable but close enough to provide enlightenment:

One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny.

It travels public thoroughfares where both its occupants and its contents are in plain view . . . . [I]nsofar as Fourth Amendment protection extends to a motor vehicle, it is the right to privacy that is the touchstone of our inquiry.

Cardwell v. Lewis, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974).

Further, the majority fails to acknowledge that an ally could have easily moved the car and destroyed any evidence. If the majority means to require the officers to stand guard over the car while they are awaiting a warrant, they have in effect authorized a seizure, but required a warrant for the search. *See* Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Such an authorization would be inconsistent with their beginning premise that "if the seizure of the car . . . was valid, the later search . . . was also valid." More importantly, I find such a requirement to be inconsistent with United States v. Evans, 481 F.2d 990, 994 (9th Cir. 1973). I would affirm.