**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Michael J. MINOR, aka George Stillwell,**
**and Frank C. Todd, Defendants.**

**Cr. No. 74–62.**

United States District Court,
D. Hawaii.

Sept. 27, 1974.

204

William J. Eggers III, Asst. U. S. Atty., Harold M. Fong, U. S. Atty., Honolulu, Hawaii, for plaintiff.

Brook Hart, Hart, Leavitt & Hall, Honolulu, Hawaii, Patrick Sarsfield Hallinan, Hallinan, Blum & Grode, Lance S. Grode, San Francisco, Cal., for defendants.

## DECISION ON MOTIONS TO SUPPRESS EVIDENCE AND TO RETURN PROPERTY

SAMUEL P. KING, District Judge.

The Defendants in this case are charged with possession with intent to distribute approximately 250 pounds of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Pursuant to Rules 12 and 41 of the Federal Rules of Criminal Procedure, the Defendants have moved for a suppression and return of certain evidence seized from their vehicles. The issue at hand is whether or not the searches of the Defendants' automobiles and the seizure of the evidence in question contravened the Fourth Amendment. I hold that they did not, and accordingly deny Defendants' motions.

In February, Government agents discovered a large amount of marijuana hidden in chairs packed in crates at a cargo warehouse at Honolulu Airport. The chairs were shipped from Thailand and consigned to American Customs Brokerage, acting as the agents for Design 5 Interiors. Subsequent investigation failed to locate Design 5 Interiors, but a description of the store's owner and operator, one George Stillwell, was obtained. When efforts to find Stillwell failed, federal officials decided to make a "controlled delivery" of the chairs.

The chairs were eventually taken to a warehouse of Higa Enterprises, where they remained under close surveillance for two weeks. During this period, Higa Enterprises received a check for hauling and storage charges from Stillwell. Finally, a truck from a local delivery firm arrived with an order from Stillwell to deliver the chairs to an apartment address in Punaluu. As the chairs were being loaded, the warehouse owner informed the government agents that a "suspicious" person was loitering around the premises. This individual was later identified as Defendant Todd.

After the chairs were loaded and vehicular surveillance arranged, one agent accompanied the City Transfer truck driver to Punaluu. Defendant Todd followed the delivery truck for at least part of the one hour trip, was observed later along the route walking with a two-way radio, and was seen conferring along the roadside outside Punaluu with Defendant Minor.

The chairs were delivered to the Punaluu apartment address; but because no one was home, they were left on an outdoor patio. About an hour and a half later, Defendant Minor drove to the apartment, placed a two-way radio on the crates, and began to unpack the chairs. Todd then appeared and helped him dismantle the crates. After loading two chairs into each of their respective vans, Defendants started to drive out of the apartment parking lot. Government agents stopped and apprehended Todd.

Another agent, brandishing badge and gun, attempted to stop Minor, but he fled down the highway. He was intercepted a half mile away, removed from his vehicle and arrested. When Minor's van was brought back to the apartment lot, both vehicles were searched without a warrant. From Todd's vehicle, agents seized the two chairs, a bag containing a large amount of money, keys, and an address book, and a case with some marijuana cigarettes inside. From Minor's vehicle, they took the two chairs, some money, a two-way radio, a power of attorney executed for Design 5 by a George Stillwell, a deposit slip from Hawaiian Telephone Company for Design 5, and several other items. At the present time, the government plans to use at trial the keys seized from Todd's car, and the power of attorney form and the deposit slip seized from Minor's vehicle.

While no one has so argued,[1] the seizures of the Defendants' automobiles come within the purview of 49 U.S.C. §§ 781 and 782,[2] and the Ninth Circuit has already upheld an automobile search and seizure effected pursuant to those statutes under circumstances virtually identical to those at hand. In

---

[1]. In their motions to suppress, Defendants argued that since their arrests were not based on probable cause, the arrests and the subsequent searches were illegal. Alternatively, Defendants contend that even if the arrests were legal the searches of their vehicles after their apprehension exceeded the legal scope of searches incident to lawful arrests. I make no ruling as to whether the instant searches are within the "incident to arrest" exception to the requirements of the Fourth Amendment because I believe that the searches and seizures in question are governed by the *Arias* case, *infra*, and fall within the "automobile exception", *infra*. *See generally*, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 reh. denied, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971); Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). However, I do rule that the agents had probable cause to arrest both Defendants.

Arresting officers have probable cause to arrest if, at the moment of arrest, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the . . . [arrested person] . . . had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), cited in United States v. McDowell, 475 F.2d 1037 (9th Cir. 1973). At the moment of Defendants' arrests, the agents knew that they had taken possession of contraband, albeit perhaps unknowingly, and the Defendants' conduct prior to taking the chairs hardly constituted the routine of people waiting to receive furniture worth (minus its marijuana content) approximately five hundred dollars. Under these circumstances, it could reasonably appear to the federal agents that Todd and Minor were acting more like cautious narcotics traffickers than everyday deliverymen. Furthermore, in Minor's case, there is the added factor of his attempted escape. While fleeing alone is not a reliable indication of guilt, flight from the police is a factor which supports a finding of probable cause when coupled with knowledge relating the suspect to the evidence of the crime. Sibron v. New York, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Hinton v. United States, 424 F.2d 876, 879 (D.C.Cir. 1969).

2. § 781 states,
"(a) It shall be unlawful (1) to transport, carry, or convey any contraband article in, upon, or by means of any vessel, vehicle, or aircraft; (2) to conceal or possess any contraband article in or upon any vessel, vehicle, or aircraft, or upon the person of anyone in or upon any vessel, vehicle, or aircraft; or (3) to use any vessel, vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article.
(b) As used in this section, the term "contraband article" means—
(1) Any narcotic drug which has been or is possessed with intent to sell or offer for sale in violation of any laws or regulations of the United States dealing therewith; or which has been acquired or is possessed, sold, transferred, or offered for sale, in violation of any laws of the United States dealing therewith; . . . ."
§ 782 states,
"Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited: . . . ."

United States v. Arias, 453 F.2d 641 (9th Cir. 1972), government agents, acting with the help of an informant, kept surveillance on a car which they *knew* contained marijuana. As expected, the defendant arrived and drove off in the automobile with the contraband. He drove back to the pick-up point shortly thereafter, probably because he detected the agents' surveillance. As he returned, he was arrested. After a cursory search of the auto for weapons produced nothing, the car was taken to a federal facility and searched extensively pursuant to 49 U.S.C. §§ 781 and 782. During this second search without a warrant, agents located a quantity of red seconal capsules and "marihuana debris" hidden in the vehicle's left rear quarter panel. This evidence was later used against the Defendant in his trial for marijuana smuggling. The Ninth Circuit upheld the search and seizure of the capsules and marijuana debris, and affirmed the Defendant's conviction. The parallels between *Arias* and the instant case are clear: both involved "controlled delivery" situations wherein government agents arrested a defendant driving a car *known* to contain marijuana, and then searched the car for evidence other than the known contraband. When such a search, even for hidden items, uncovers additional and corroborative evidence of the crime, *Arias* dictates that the evidence may be used against the defendant at trial.

Recently, in United States v. McCormick, 502 F.2d 281 (1974), the Ninth Circuit held that warrantless searches and seizures under 49 U.S.C. §§ 781 and 782 are legal only if they come within one of the three recognized exceptions to the warrant requirement. *Contra*, United States v. White, 488 F.2d 563 (6th Cir. 1973). While holding the auto search at hand illegal as not falling within one of the exceptions, the *McCormick* court distinguished *Arias* as a case which was within the "automobile exception" to the Fourth Amendment. The "automobile exception" exists when there is probable cause to believe the vehicle contains contraband, and there are exigent circumstances associated with the automobile.

Obviously, the arresting officers had probable cause to believe Minor's and Todd's vehicles were carrying contraband. And if the facts of *Arias* constitute exigent circumstances, the facts of this case do also, even though in both cases, before the searches occurred, the defendants were under arrest, and the cars in police custody. In United States v. Evans, 481 F.2d 990 (9th Cir. 1973), that the defendant was handcuffed when the auto search occurred did not prevent a finding of exigent circumstances. Similarly, the Supreme Court has validated a vehicle search when the occupants of the car were in custody and there was no means of relating this fact or the location of the car to a friend or confederate. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, reh. denied, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970), as discussed in Cardwell v. Lewis, 417 U.S. 583, 590, 94 S.Ct. 2464, 41 L.Ed.2d 325 (June 17, 1974). Overall, whatever can be said about the relation of the exigent circumstances concept to common sense, the facts of this case are closer to those of *Arias* and *Chambers, supra,* than to those of cases where exigent circumstances are not found.[3]

Moreover, another case close to the one at hand is United States v. Cohn, 472 F.2d 290 (9th Cir. 1973).[4] In that case, narcotics officers, who were keeping a vehicle under surveillance, detected a strong odor of marijuana emanating from the vehicle. One officer looked

---

3. Courts do not find exigent circumstances to exist when police suspect the role of a car in a crime for several weeks or more and fail to get a warrant, when the car in question is not believed to be carrying contraband or dangerous weapons at the time of the search, when the car is sitting in a private driveway, and when the defendant is not likely to gain access to the automobile. Coolidge v. New Hampshire, *supra* note 1; United States v. McCormick, *supra.*

4. *Accord*, United States v. Church, 490 F.2d 353 (9th Cir. 1973).

through the car window and saw what appeared to be a þrick of marijuana. He reached into the car and confirmed that it was marijuana. Later, the defendant arrived and drove away in the subject automobile. He was apprehended on the highway, his car was searched, and thirty-nine bricks of marijuana were seized. Affirming the defendant's conviction of conspiracy to smuggle and possession with intent to distribute thirty-nine kilo bricks of marijuana, the Ninth Circuit upheld both the first "window" search and the later one on the highway when the additional contraband was discovered. As to the second search, the court stated, "It would have been a meaningless gesture for those officers . . . to have procured a warrant to search for contraband which had *already* been discovered during a lawful search . . . " at 292. *See also,* United States v. Spaulding, 462 F. 2d 1346 (5th Cir. 1972) cert. denied, 409 U.S. 884, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972). *See generally,* Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543 (1925).

Therefore, Defendants' motions pursuant to Rules 12 and 41 of the Federal Rules of Criminal Procedure are denied.