**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John KIMAK, Defendant-Appellant.**

**No. 79–1765.**

United States Court of Appeals,
Ninth Circuit.

July 7, 1980.

Rehearing Denied Aug. 21, 1980.

David P. Bancroft, Sideman, Bancroft & Sutton, San Francisco, Cal., for defendant-appellant.

Sanford Svetcov, Chief Asst. U.S. Atty., San Francisco, Cal., argued, for plaintiff-appellee; Nancy Simpson, Asst. U.S. Atty., San Francisco, Cal., on brief.

Before HUG and ALARCON, Circuit Judges, and BLUMENFELD,* District Judge.

PER CURIAM:

John Kimak appeals from a judgment of conviction for violation of 21 U.S.C. § 844, based upon his possession of MDA, a Schedule I controlled substance. Appellant's motion to suppress the MDA found in his automobile was denied by the district court following a hearing. The point for reversal pressed by Kimak is that his automobile was subjected to an illegal search and seizure.

### The Facts

On August 6, 1979, DEA Agent Robert Prezioso was told by an informant that one Henry Shernoff was going to sell him a pound of MDA the following day. Accordingly, Prezioso and several other agents went the next day to the informant's address on Market Street in San Francisco, and Prezioso went inside to await Shernoff's arrival. Shortly thereafter, the additional agents who were parked outside observed Shernoff arrive in appellant Kimak's car. Shernoff had asked Kimak to give him a lift to Market Street and to wait for him in the car while he was inside.

Before concluding a sale of one pound of MDA to Prezioso and the informant for $6,100, Shernoff told Prezioso that he would have to deliver the money from the sale to his "man";[1] his "man," said Shernoff, was waiting outside to drive him home. The agent agreed to buy the pound of MDA that Shernoff had brought with him that day, and then promptly arrested him for the sale of drugs.

During this period, which lasted about one-half hour, Kimak remained in his car, parked directly behind the surveilling agents. Just as he left the car to call his wife from a public telephone across 16th Street, the agents outside were alerted to Shernoff's arrest. Kimak had almost completed crossing the street when Agent Lowrey Leong pulled up in his car and arrested Kimak. The agents then took Kimak's car keys from him, handcuffed him, and placed him in Agent Leong's car. Both suspects were given their *Miranda* rights.

### The Seizure

Kimak was then informed that his car was being seized for forfeiture pursuant to 21 U.S.C. § 881.[2] One of the agents opened

---

* Honorable M. Joseph Blumenfeld, Senior United States District Judge for the District of Connecticut, sitting by designation.

1. Prezioso averred that "[b]ased upon my experience and knowledge as a special agent with the Drug Enforcement Administration and its predecessor agency narcotics dealers utilize the word 'man' when referring to their source of supply for illicit drugs."

2. The statute provides in pertinent part:
   § 881. Forfeitures
   (a) Property subject
   The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.

. . . . .

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2), . . ..

. . . . .

(b) Seizure pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims
Any property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—

. . . . .

(4) the Attorney General has probable cause to believe that the property has been

the trunk of Kimak's car at the scene, but closed it without seizing anything when another agent advised him to await transportation of the car to DEA's garage. Nevertheless, Kimak believed that the agent must have smelled the strong odor of Colombian marijuana, which he knew to be contained in plastic bags secreted in cardboard boxes in the trunk. Thus, when asked by the agents about the contents of his car, Kimak admitted that there were five pounds of marijuana in the trunk that he had sold to Shernoff, as well as a small amount of white powder (which was MDA) in a plastic bag with a map on the driver's side of the front seat area—a gift from Shernoff for giving him a lift to the informant's address. At the DEA garage and in Kimak's presence, but without a warrant and without Kimak's permission, the agents searched the vehicle and found a clear plastic bag containing 1.88 grams of MDA where Kimak had said it would be, as well as ten pounds of marijuana in the trunk.

■ The district court denied the motion to suppress the MDA found in the defendant's automobile. Although Justice Rehnquist observed in *Cady v. Dombroski*, 413 U.S. 433, 440, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973), that the law governing warrantless searches and seizures, especially those involving automobiles, "is something less than a seamless web," a decision in this case does not require that we weave any new threads into the web to fill the interstices that may exist. It cannot be seriously questioned that the government agents who seized the defendant's automobile not only had probable cause to believe, *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964),[3] but knew that the automobile had been used to transport the MDA. It is settled that "[A] vehicle may

be seized [for forfeiture] even in the absence of probable cause to believe it contains contraband *if there is nonetheless probable cause to believe that it was used* 'to facilitate the *transfer of contraband.*'" *United States v. Johnson*, 572 F.2d 227, 234 (9th Cir.), *cert. denied*, 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1137 (1978) (emphasis added) (quoting *United States v. LaVecchia*, 513 F.2d 1210, 1216 (2d Cir. 1975)). The defendant relies upon *United States v. McCormick*, 502 F.2d 281, 287 (9th Cir. 1974). That was a case where the seizure of McCormick's car was not made until two and one-half months after the agents had probable cause to believe that it had been used illegally. It is clearly distinguishable. Here the seizure of the defendant's car occurred within minutes after the agents obtained knowledge of its illegal use, and substantially contemporaneously with his arrest. Indeed, at the time of the seizure, the automobile was on the street and not only had been, but was still being used to facilitate the completion of the sale of MDA. The seizure of the defendant's automobile at that time was valid under the "automobile exception" announced in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1945). *See United States v. McCormick, supra*, at 286–87.

### The Search

■ The next question is whether evidence obtained as the fruit of a subsequent search was admissible in the criminal proceedings against the defendant. Since the possession of the defendant's automobile was legally obtained, its search was lawful. The ruling of the Court in *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967) that "we cannot hold

used or is intended to be used in violation of this subchapter.

In the event of seizure pursuant to paragraph (3) or (4) of this subsection, proceedings under subsection (d) of this section shall be instituted promptly.

**3.** In *Beck* the Court defined probable cause: "Whether [an] arrest was constitutionally valid depends in turn on whether, at the moment the arrest was made the officers had probable

cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." No greater amount of probable cause is needed to justify the warrantless seizure of an automobile for forfeiture.

unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding" has not been impaired. *See United States v. Johnson, supra,* at 232. It was also said in the plurality opinion in *Coolidge v. New Hampshire,* 403 U.S. 443, 463, 91 S.Ct. 2022, 2036, 29 L.Ed.2d 564 (1971), that "where the police may stop and search an automobile . . . they may also seize it and search it later at the police station." The agents were not required to make the search on the public street where it was seized; they were entitled to take it and the defendant to the DEA garage where a search could safely be made. *Chambers v. Maroney,* 399 U.S. 42, 52 n. 10, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). *See also United States v. Johnson, supra,* at 233 (quoting *United States v. McCormick, supra,* at 284 ("We do not doubt that, if the seizure of the car . . . was valid, the later search . . . was also valid."));[4] *United States v. Arias,* 453 F.2d 641, 643 (9th Cir. 1972); *United States v. Karp,* 508 F.2d 1122, 1124 (9th Cir. 1974); *United States v. Zaicek,* 519 F.2d 412, 414 (2d Cir. 1975). We see no reason to depart from that rule in this case.

In summary, we hold that the seizure of the defendant's automobile and its later search which resulted in the seizure of the MDA did not deprive the defendant of his fourth amendment rights. Accordingly, we affirm his conviction under 21 U.S.C. § 844.

---

4. Although a divided panel in *United States v. McCormick, supra,* held that probable cause would not justify a seizure which did not occur immediately after cause arose but rather a month and one-half later, 562 F.2d at 287, all members of the panel did agree that "if the seizure of the car . . . was valid, the later search . . . was also valid," *id.* at 284; *id.* at 290 (Wallace, J., dissenting).