39 F.3d 1189
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ricardo MORENO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Claudio Cruz ORTEGA, Defendant-Appellant.
 Nos. 93-10573, 93-10576.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 8, 1994.*
Decided Nov. 1, 1994.
 
 Before: FLETCHER, HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ricardo Moreno and Claudio Cruz Ortega ("appellants") appeal their jury convictions for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 846, and for possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). Moreno challenges the district court's denial of his motion to suppress evidence seized pursuant to a warrantless search of a tractor-trailer. Both Moreno and Ortega argue that the prosecutor improperly vouched for the credibility of government witnesses. We affirm.
 
 
 3
 * The convictions in this case arise out of an investigation headed by John McFarland, an agent for the Arizona Department of Public Safety, of the use of commercial vehicles in drug smuggling operations. From January to July 1992, McFarland led an investigation of an individual named Rene Tineo who used a company named "Four R's Produce" as a front to transport marijuana. In a search of the premises of Four R's Produce, investigators found drug ledgers. In March 1992, a tractor-trailer driven under the authority of Four R's Produce was stopped and found to contain 4,000 pounds of marijuana.
 
 
 4
 During their investigation, officers learned that one of Tineo's drivers was a man named Rodger Bradley. Subsequently, New Hampshire state troopers sent a letter to the Arizona officers, notifying them that Bradley's tractor had been seen in Concord in March and that they had tracked a load of marijuana to that particular tractor-trailer.
 
 
 5
 On July 1, 1992, McFarland learned that Bradley was in Tucson, Arizona, where he had rented two rooms at a Motel 6. McFarland testified that it was his experience that drug dealers often rent two rooms: one for sleeping and one for negotiating. McFarland also testified that Tineo had used two rooms when the 4,000 pounds of marijuana had been unloaded.
 
 
 6
 The agents watched the rooms at the Motel 6, and observed as Bradley drove a tractor-trailer to 232 East Pennsylvania, a home in a residential neighborhood. The next day, Officer Dan Holstine observed a man load brown boxes from a private vehicle into Bradley's tractor-trailer. After the tractor-trailer was loaded, Bradley drove it to a different Motel 6. Later that day, a second man arrived, and he and Bradley departed in the tractor-trailer.
 
 
 7
 McFarland joined Police Officer Gresly in her canine narcotics vehicle and followed the tractor-trailer as it left Tucson and headed toward Phoenix. After the tractor-trailer had traveled approximately ten miles, McFarland stopped the vehicle. McFarland testified that he stopped the vehicle in part because he had observed that the tractor-trailer had malfunctioning identification lights and no license plate, and in part because he suspected ongoing drug smuggling activities. McFarland interviewed the two drivers while Officer Gresly issued a warning for the vehicle infractions. McFarland then requested consent to search the tractor-trailer. The drivers refused. The drivers also acted nervous. Officer Gresly retrieved a drug detection dog, Josh, from her car and made an exterior sweep of the tractor-trailer. When Josh alerted on a particular corner of the tractor-trailer, the officers opened it and discovered 1,728 pounds of cocaine.
 
 
 8
 Soon after Bradley was arrested, he began to cooperate with the authorities. Bradley gave the officers information that led them to a locker in a self-storage facility in Bakersfield, rented in appellant Ortega's name. A search of this locker revealed 1,481 pounds of cocaine.
 
 
 9
 On July 29, 1992, a grand jury returned an indictment charging Moreno, Ortega, Tineo, Bradley, Ruben Munoz and others with conspiracy to possess cocaine with intent to distribute and with possession of cocaine with intent to distribute. Tineo and Bradley both pled guilty to charges that were brought against them and testified for the government at trial. At trial, the government alleged that Bradley, Moreno, Ortega, Tineo and another individual organized a company in Bakersfield named "Quality Trucking" to act as a cover for a cocaine smuggling operation. The government presented evidence regarding three loads of cocaine that were transported by Quality Trucking to Bakersfield on June 16, 1992, June 30, 1992 (the cocaine in the locker in Bakersfield), and July 2, 1992 (the cocaine in the tractor-trailer that was driven by Bradley).
 
 
 10
 On June 11, 1993, appellants were convicted on all counts with which they were charged and Munoz was acquitted.[1] On August 30, 1993, Moreno was sentenced to 360 months imprisonment and Ortega was sentenced to 324 months imprisonment. Appellants timely appealed. We have jurisdiction.
 
 II
 
 11
 Moreno contends that the stop of the tractor-trailer violated his Fourth Amendment rights.[2]
 
 
 12
 In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court held that police can conduct a brief investigatory stop based upon evidence not rising to the level of probable cause. In evaluating an investigatory stop, the court looks at the totality of the circumstances to determine "whether the detaining officers had a particularized objective basis for suspecting the particular person of criminal activity." United States v. Alvarez, 899 F.2d 833, 836 (9th Cir.1990) (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)), cert. denied, 498 U.S. 1024 (1991). Although the court must consider the experience of a trained officer, such experience may not be used to give the officer unbridled discretion to make a stop. United States v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989).
 
 
 13
 A trial judge's finding of founded suspicion to stop based on specific, articulable facts is reviewed de novo. United States v. Carrillo, 902 F.2d 1405, 1410-11 (9th Cir.1990).
 
 
 14
 In this case, Officer McFarland testified that he stopped the tractor-trailer because (1) the vehicle had defective lighting and no license plate, in violation of Arizona law; and (2) he had a reasonable suspicion that the drivers were engaged in unlawful drug smuggling activities. On appeal, Moreno contends that the minor vehicle infractions were merely a pretext to stop and search the tractor-trailer, and that the stop must therefore be justified based on facts relevant to the narcotics issue.
 
 
 15
 We do not address whether the minor vehicle infractions were merely a pretext to stop the tractor-trailer because we conclude that the government has pointed to specific articulable facts, together with inferences drawn from the facts, that reasonably warranted suspicion that the drivers of the vehicle were in the process of committing a crime. See Cortez, 449 U.S. at 418-19 (founded suspicion can be based on inferences drawn by experienced officers from facts before them). First, the government had specific evidence that connected Bradley to previous drug operations. McFarland had been investigating Tineo's drug smuggling business and had confirmed that Tineo used commercial vehicles to smuggle drugs across the United States. McFarland knew that Bradley drove vehicles for Tineo and that drugs had been traced to Bradley's tractor-trailer.
 
 
 16
 Second, some of Bradley's activities were also consistent with the actions of drug dealers. See United States v. Sutton, 794 F.2d 1415, 1426 (9th Cir.1986) (considering that actions were consistent with prior drug smuggling activities in area). Thus, McFarland was aware that Tineo would rent two rooms at a motel when preparing a load of drugs, and that this was common behavior for drug dealers. McFarland was also aware that Bradley was in Tucson, and that he had rented two rooms at a motel.
 
 
 17
 Finally, in light of this evidence, Bradley's behavior was sufficiently unusual to raise a reasonable suspicion of drug activities. Although ordinarily the loading of a commercial vehicle is innocent activity, the loading of such a vehicle in a residential neighborhood with boxes taken from a private vehicle is unusual. Moreover, the fact that Bradley returned to a different Motel 6 from the one at which he originally stayed is also unusual.
 
 
 18
 We therefore conclude that the specific information about Bradley's past activities combined with his unusual behavior on July 2, 1992 gave rise to a reasonable articulable suspicion that drug activities were ongoing.
 
 
 19
 Moreno contends that even if the initial stop was not illegal, the subsequent detention was excessively intrusive. He contends that after the initial stop and questioning, the vehicle should have been allowed to proceed, and that the dog sniff was an unreasonable search.
 
 
 20
 A detention must be reasonably related in scope to the circumstances which justified interference in the first place. Terry, 392 U.S. at 19-20. Thus, a "reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop." Florida v. Royer, 460 U.S. 491, 498 (1983). In this case, the brief detention and dog sniff were within the scope of the stop. Contrary to Moreno's suggestion, an exterior dog sniff of an automobile is not a search that requires probable cause. United States v. DiCesare, 765 F.2d 890, 897 (9th Cir.), amended, 777 F.2d 543 (9th Cir.1985) (sniff of automobile trunk is not a Fourth Amendment search); see also United States v. Lingenfelter, 997 F.2d 632, 637-39 (9th Cir.1993) (dog sniff of exterior of commercial warehouse is not a Fourth Amendment search). Because McFarland stopped the tractor-trailer based in part on his reasonable suspicion of ongoing drug activities, the dog sniff was also well within the permissible scope of the detention. Moreno does not appear to contend that the duration of the detention was excessive, nor does the record suggest that it was. See United States v. Sharpe, 470 U.S. 675, 685-88 (1985) (twenty minute stop is reasonable where officers diligently pursue a means of investigation that is likely to quickly dispel their suspicions).
 
 III
 
 21
 Moreno contends that the warrantless search of the tractor-trailer violated the Fourth Amendment.
 
 
 22
 Police may conduct a warrantless search of an automobile on a public highway if they have probable cause.[3] United States v. Johns, 469 U.S. 478, 484 (1985); United States v. Dunn, 946 F.2d 615, 618-19 (9th Cir.), cert. denied, 112 S.Ct. 401 (1991). This "automobile exception" to the warrant requirement is based on (1) the mobility of such automobiles, and (2) the reduced privacy expectation that individuals have in their automobiles due to the pervasive regulation of vehicles capable of travelling on public highways. California v. Carney, 471 U.S. 386, 390-94 (1985). On appeal, Moreno contends that the automobile exception to the warrant requirement was inapplicable because the drivers of the vehicle were "under control." We disagree.
 
 
 23
 The Supreme Court has held that "[w]hen a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes--temporary or otherwise--the two justifications for the vehicle exception come into play." Carney, 471 U.S. at 392-93. "[T]he justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away ... during the period required for the police to obtain a warrant." Michigan v. Thomas, 458 U.S. 259, 261 (1982) (per curiam); see also United States v. Ross, 456 U.S. 798, 807 n. 9 (1982); United States v. Perry, 925 F.2d 1077, 1080-81 n. 4 (8th Cir.), cert. denied, 112 S.Ct. 152 (1991). Thus, Moreno's argument that a warrant was required because the vehicle was "under control" is without merit.[4]
 
 IV
 
 24
 Appellants contend that the prosecutor improperly vouched for the credibility of Bradley, a coconspirator and a government witness. Ortega also contends that the government improperly vouched for the credibility of Dan Holstine, another government witness. Because defense counsel objected at trial to the alleged improper statements, we review these claims for harmless error. United States v. Browne, 829 F.2d 760, 766 (9th Cir.1987), cert. denied, 485 U.S. 991 (1988).
 
 
 25
 "As a general rule, a prosecutor may not express ... his belief in the credibility of government witnesses." United States v. Molina, 934 F.2d 1440, 1444 (9th Cir.1991). "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993).
 
 
 26
 Appellants contend that the prosecutor improperly vouched for the credibility of Bradley by eliciting testimony regarding the truthfulness provision of Bradley's plea agreement on direct examination. Although it is clear that the prosecutor elicited testimony regarding the truthfulness provision of Bradley's plea agreement, the prosecutor's questions and the elicited testimony did not constitute vouching. In United States v. Monroe, 943 F.2d 1007 (9th Cir.1991), cert. denied, 112 S.Ct. 1585 (1992), we held that questioning a witness regarding the truthfulness clause of the witness's plea agreement is not improper vouching if it occurs after the defense has attacked the witness's credibility because of his plea agreement. Id. at 1013-14. In this case, all three defendants challenged Bradley's credibility by pointing out that he would receive a substantially reduced sentence as a result of his plea bargain. In opening statements, Moreno's counsel stated:
 
 
 27
 I would ask you just to keep an open mind, as the judge has asked you to do, on these matters, to listen to Tineo and Bradley, to determine that credibility. It's Mr. Moreno's belief that, when you have done that, at the end of the case, when you have heard what does or does not corroborate their testimony, you will conclude that, in fact, Richard Moreno is here just because two other people are seeking to save themselves.
 
 
 28
 Rptr.Trans. 6/8/93, at 56.
 
 Similarly, counsel for Ortega stated:
 
 29
 The issue in this case, as I see it, is the credibility of the witnesses.... The principal witnesses are Mr. Bradley and Mr. Tineo, both of whom have gotten beautiful plea agreements to come here and tell you that these three defendants are all involved in distributing cocaine in a big conspiracy.
 
 
 30
 My client, Mr. Ortega, will deny this. He will testify. He has pled not guilty to the indictment. He will tell you that what Mr. Bradley and Mr. Tineo testified to is not true.
 
 
 31
 Rptr.Trans. 6/8/93, at 57.
 
 Finally, counsel for Munoz stated:
 
 32
 I want you also, ladies and gentlemen, when you consider the testimony of Rodger Bradley, to consider his motives, his desire for leniency, his antisocial lifestyle, his fear of prosecution and his willingness to place his own interest above that of society.
 
 
 33
 Rptr.Trans. 6/8/93, at 60.
 
 
 34
 Because these comments challenged Bradley's credibility on the grounds that Bradley had entered into a plea agreement, the prosecutor's questions to Bradley did not constitute vouching.[5]
 
 
 35
 Ortega contends that the prosecutor also improperly vouched for Daniel Holstine, a member of the Arizona Joint Counter Narcotics Task Force and the National Guard and a government witness. In closing argument, the prosecutor stated:
 
 
 36
 Ladies and Gentlemen, you do not have to rely just on the testimony of Rodger Bradley. Remember Holstine. He is the gentleman who was here for maneuvers. I guess I pulled him out of the field in his camouflaged outfit. I submit to you that you aren't going to find a more honest witness than that anyway.
 
 
 37
 Rptr.Trans. 6/11/93 at 536 (emphasis added). Ortega contends that the prosecutor placed the prestige of the government behind Holstine by stating his personal opinion that Holstine is credible.
 
 
 38
 Although the prosecutor's statement that he "submitted" that the jury would not find a more honest witness than Holstine is not particularly articulate, it is best understood in the context of what came before not as a personal assurance of Holstine's credibility but as an argument that the jury should consider him to be credible because he is a member of the National Guard. We conclude it did not constitute improper vouching.
 
 V
 
 39
 We hold that the officers had reasonable articulable suspicion to stop the tractor-trailer and that the scope of the detention was also reasonable. We also hold that the prosecutor's remarks were not improper vouching. We affirm the convictions.
 
 
 40
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Moreno was charged with conspiracy and with possession of cocaine on July 2 and June 30. Ortega was charged with conspiracy and with possession with intent to distribute on June 16, June 30, and July 2. Munoz was charged with conspiracy and with possession with intent to distribute on July 2
 
 
 [2]
 As a preliminary matter, the government argues that Moreno does not have standing to challenge the district court's denial of the motion to suppress. Because we conclude that the district court properly denied the motion to suppress, we do not address the government's challenge to Moreno's standing
 
 
 [3]
 Moreno does not contend that the officers did not have probable cause to search the vehicle once the narcotics detection dog had alerted on it
 
 
 [4]
 Moreno cites to United States v. McCormick, 502 F.2d 281 (9th Cir.1974), to support his position. McCormick does not help Moreno, however, because it merely stands for the proposition that exigent circumstances to search a vehicle do not exist when there is no indication that the vehicle to be searched is being used for criminal activities at that time, where the owner of the vehicle is handcuffed in his home and could not get to the vehicle, and where a police car blocks any possible escape. Id. at 287. Moreno also suggests that a warrant was required because Bradley was not under arrest when the vehicle was searched and cites two cases in support of this proposition. New York v. Belton, 453 U.S. 454 (1981); United States v. Vasey, 834 F.2d 782 (9th Cir.1987). These cases are not relevant, however, because they concern searches incident to a lawful arrest
 
 
 [5]
 Appellants contend that only the prosecutor called Bradley's credibility into question and that the government cannot respond to its own attacks on the witness's credibility by referring to truthfulness requirements in plea bargains. This argument is without merit because the prosecutor did not challenge Bradley's credibility. He stated:
 Now, Ladies and Gentlemen, by my calling Bradley and by calling Tineo as witnesses, I don't want you to think that I am telling you they are wonderful people or they are great people or they shouldn't be invited--they should be invited over to the house for dinner. I am not saying that. They are not. You will hear that Bradley used cocaine excessively. What I am asking you to do is to judge the truthfulness of their testimony, using two things: Look at the way they testify from the stand. Listen to what they tell you.
 Rptr.Trans. 6/8/93, at 46. This comment merely instructs the jury to decide for itself the truthfulness of the witness's testimony.